JOHN L. WHITING AND SONS COMPANY *vs.* CHARLES C. BARTON, JR.

Suffolk.    November 12, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Sale. Corporation. Contract,* Making. *Mistake. Replevin. Estoppel.*

If the owner of certain goods, being assured that a proposed corporation is in existence and believing this to be the fact, delivers the goods on the day before the corporation is formed at the address given to him as that of the corporation in accordance with the terms of an oral order purporting to have been given in behalf of the corporation, there is no sale, and, in the absence of a new contract made with the corporation after it is formed, the owner of the goods may replevy them from the corporation or its assignee.

By an express provision of St. 1903, c. 437, § 12, the existence of a business corporation formed under that statute begins upon the filing of the articles of organization in the office of the secretary of the Commonwealth, and not before.

In an action of replevin by a corporation against the common law assignee for the benefit of the creditors of an insolvent corporation for certain goods delivered by the plaintiff on the day before the defendant's assignor was created, the delivery having been made by the treasurer of the plaintiff who supposed the defendant's assignor to be in existence, it appeared that the plaintiff's treasurer was the only person connected with the plaintiff who had knowledge of the particulars of the transaction, and that he had no knowledge of his mistake in having supposed that he was contracting with a corporation in existence, until the corporation had made the assignment to the defendant for the benefit of its creditors, and that then he had directed the bringing of the action of replevin. There was no evidence of any action by the plaintiff in reference to the matter, which could change its situation, until after the assignment was made. It appeared that the plaintiff sent to the defendant's assignor monthly statements of account which included the goods replevied, but it might have been found that these accounts were sent by a bookkeeper as a matter of regular routine in the belief that there had been a valid sale of the goods at the time of their delivery. The trial judge, who heard the case without a jury, refused to rule that the plaintiff could not maintain its action, and found for the plaintiff. *Held,* that it did

not appear that the plaintiff had done anything with a knowledge of the facts on which an estoppel could be founded; that the presiding judge was right in refusing to rule as requested, and that his finding for the plaintiff was warranted.

REPLEVIN by the John L. Whiting and Sons Company, a corporation, for twenty paint brushes of more than $20 in value against the common law assignee for the benefit of the creditors of the White-Gates Paint and Varnish Company, an insolvent corporation. Writ in the Municipal Court of the City of Boston dated February 7, 1908.

On appeal to the Superior Court the case was heard by *Fessenden,* J., without a jury. At the close of the evidence, the substance of which is stated in the opinion, the defendant asked the judge to rule that upon all the evidence the action could not be maintained. The judge refused to make this ruling, and found for the plaintiff in the sum of $1 and costs. The defendant alleged exceptions.

*R. B. Sprague,* for the defendant.

*F. O. White,* for the plaintiff.

KNOWLTON, C. J. This is an action of replevin to recover certain merchandise from the assignee holding under a conveyance of the White-Gates Paint and Varnish Company for the benefit of its creditors. This corporation is now in bankruptcy, and the action is defended by the trustee. The plaintiff is a manufacturing corporation, established under the laws of Massachusetts and doing business in Boston. The White-Gates Company was organized under the laws of this State, and its agreement of association and the proceedings under it were filed with the commissioner of corporations on September 10, 1907, and its certificate of incorporation was issued by the secretary of the Commonwealth on the same day. In July, 1907, White and Gates, two of the subsequent incorporators, were at the plaintiff's factory, and were shown samples of brushes. They gave an order for a large number of brushes, stating that they, with one Philbrick, were to form a corporation, and these brushes were to be made for and delivered to the new corporation on or before September 1, 1907. Philbrick decided not to join the enterprise, and on September 5, 1907, a meeting was held by White and Gates and two men of the name of Curry, and an agreement of association in the usual form was

signed, containing a waiver of the notice of the time and place of holding the first meeting for the organization of the corporation, and appointing September 9, 1907, as the time for holding this meeting.  On September 7, Gates called at the plaintiff's factory and had a talk with Whiting, the treasurer of the plaintiff company, and handed him a printed card of the White-Gates Paint and Varnish Company which had been prepared in anticipation of the organization of the corporation.  A place of business in Boston, which had been hired beforehand, was designated on this card.  He told Whiting that the company was formed, and to go right ahead and deliver the goods.  The goods described in the writ were accordingly delivered at the designated place of business of the supposed new corporation, on the morning of September 9, and at the same time were charged as goods sold to this corporation on a credit of four months from November 1, 1907.  The corporation made an assignment for the benefit of its creditors on January 31, 1908, and afterwards was adjudged a bankrupt. The plaintiff sold other goods to the corporation, and sent a monthly statement of account covering the goods replevied and the others.  The replevied goods were taken by the corporation after its organization, and were credited as bought of the plaintiff.

The first question is whether the title to the merchandise passed by the supposed sale and delivery on the morning of September 9.  We think it plain that it did not.  There was then no such corporation as the plaintiff supposed it was dealing with.  By the terms of the St. of 1903, c. 437, § 12, the language of the certificate to be issued by the secretary of the Commonwealth is that the persons named as subscribers "are hereby made an existing corporation"; and "such certificate shall have the force and effect of a special charter," etc.  By the same section it is provided that "the existence of every corporation which is not created by special law shall begin upon the filing of the articles of organization in the office of the secretary of the Commonwealth."  As the certificate, which has the effect of a special charter, is to be issued forthwith, it is assumed by the statute that the filing of the articles and the making of the certificate will take place at substantially the

same time. Until there was a corporation, there was no party with which the contract in this case could be made, or to which the title could pass. There is no doubt, therefore, that, after the delivery of the merchandise and before anything else occurred, the plaintiff could have replevied the property from any one in whose possession it was found. The law applicable to these conditions has been discussed in *Abbott* v. *Hapgood*, 150 Mass. 248, *Pennell* v. *Lothrop*, 191 Mass. 357, *Penn Match Co.* v. *Hapgood*, 141 Mass. 145, and *Holyoke Envelope Co.* v. *United States Envelope Co.* 182 Mass. 171.

The remaining question is whether anything has occurred to make a contract and pass the title since. Whiting, the plaintiff's treasurer, who has deceased since the commencement of this action, seems to have been the only one connected with the plaintiff company that had knowledge of the particulars of this transaction. Representing the plaintiff, he acted under a mistake, and supposed he made a contract, when he made no contract, because the party that he supposed he was contracting with was not in existence. The evidence tends to show that he had no knowledge of this mistake until after the corporation made the assignment for the benefit of creditors. Then he directed the bringing of this writ of replevin. There is no evidence of any action by the plaintiff in reference to this matter, or of any knowledge of the facts on the part of the plaintiff, which could change its situation, until after the assignment. There is the fact that monthly statements of account were sent which included these goods; but it is probable that they were sent by a bookkeeper as a matter of regular routine, in the belief that there was a valid sale at the time of the delivery. At least, the judge might have so found. Such action, under a mistake of fact, would not affect the rights of the plaintiff. The plaintiff did nothing, with a knowledge of the facts, upon which an estoppel could be founded.

The only exception was to the refusal of the judge to rule that the plaintiff could not maintain its action. If there was any view of the evidence which would warrant a finding for the plaintiff the exception must be overruled. We discover no error at the trial.

*Exceptions overruled.*