[File No. 6516.]

ELAINE CLOONE and W. F. Cloone, Respondents, v. MINOT
BUILDING & LOAN ASSOCIATION, a Corporation, and
Minot Federal Savings and Loan Association, a Corporation,
Appellants.

(282 N. W. 441.)

Opinion filed December 6, 1938.

*L. J. Palda, Jr.,* for appellants.

546

*B. H. Bradford,* for respondents.

548

W. H. Shure, Nilles, Oehlert, & Nilles, Burnett, Bergesen & Haakenstad, and Fred J. Fredrickson, amici curiæ.

SATHRE, J. This is an appeal from the district court, Ward county, from a judgment in favor of the plaintiffs.

In May 1936, the plaintiffs brought an action against the defendant Building and Loan Association to recover penalties under the usury statutes of this state.

The case was tried to a jury, but at the close of the testimony both parties moved for directed verdicts and agreed that the court might take the case from the jury and the issues be tried by the court. The court thereupon dismissed the jury and made its findings, and upon these findings entered judgment for the plaintiff.

Defendants thereupon made a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, which motion was denied by the court. The defendant appealed and demanded a trial de novo.

Under the proceedings had in the court below, and upon the state of the record in this case, the defendants are not entitled to a trial de novo. This question was before this court in the case of Wasson v. Brotherhood of R. Trainmen, 65 N. D. 246, 257 N. W. 635. We quote from the syllabus in that case: "Where a law action is tried to a court and jury and at the close of the evidence both plaintiff and defendant move for a directed verdict, respectively, and thereupon the jury is dismissed and the issues are determined by the court, upon appeal from such determination to this court, the same does not constitute a case tried to the court without a jury, as contemplated by § 7846, 1925 Supplement to the Comp. Laws of 1913, as amended by chapter 208, Laws of 1933."

The defendants assign numerous specifications of error, but only the first and the fourth need to be considered here, namely:

I. That the court erred in denying defendant's motion for a directed verdict and for judgment of dismissal on their motion at the close of the taking of testimony.

IV. The court erred in denying defendant's motion for judgment notwithstanding findings and verdict or for a new trial.

Other assignments are directed against rulings of the trial court relative to admission or exclusion of testimony, but in view of the law applicable to this case, they need not be considered.

The question before us, therefore, is whether or not the conclusions

and judgment of the trial court are sustained by the record as a matter of law.

The findings so far as material here are in substance as follows:

(1) In December 1922, the Mutual Building and Loan Association of Minot, was duly organized and received its charter under the laws of the state of North Dakota, and in the year 1926, the name of said corporation was changed to the Minot Building and Loan Association, and in October 1935, the said corporation was reorganized and converted into the Minot Federal Savings and Loan Association, and the business theretofore conducted under the name of the Minot Building and Loan Association was taken over by the Minot Federal Savings and Loan Association, and that the said corporation duly qualified under the federal law.

(2) That thereafter the incorporators of the defendant corporation adopted certain by-laws, but that such by-laws were never certified by a majority of the Board of Directors and were never recorded in any book known as the "Book of By-Laws" open to public inspection, that such by-laws did not provide for or fix rates of premium and interest at which loans would be made to any stockholder, nor did the charter of said corporation contain any provision with reference to premiums to be charged in connection with loans to stockholders.

(3) That on the 9th day of April, 1929, the plaintiffs applied to the Minot Building and Loan Association for a loan of $3,000, that thereafter the application was amended increasing the sum applied for to $3,300, and the plaintiffs were then required to subscribe for 33 shares of stock in the corporation as a condition precedent to receiving the loan, and the plaintiff did so subscribe and that thereupon the plaintiff executed and delivered to the Minot Building and Loan Association their note for the said loan, which note is as follows:

"For value received we promise to pay the Minot Building and Loan Association or order the sum of Thirty Three Hundred 00/100 Dollars, . . . at the Office of said Association, in the City of Minot, North Dakota, (said sum being money advanced to Elaine Cloone and W. F. Cloone, her husband by said Association upon 33 shares of Class "A" series of the stock of said Association) in monthly payments as follows, viz.: The sum of $44.55 in advance, the receipt of which is hereby acknowledged, the sum of $44.55 on the first day

of June A. D. 1929, and the further sum of $44.55 on the first day of each and every month thereafter, for a period of 118 months and for the principal and interest upon said sum, and also to pay the further sum of $16.50 on the first day of each and every month, as and for the monthly dues on said 33 shares of the Class "A" series of the stock of such Association, . . . ."

That for the purpose of securing payment of said note, the plaintiffs executed and delivered to Minot Building and Loan Association a mortgage on certain real property owned by the plaintiffs.

(4) That all of the payments provided for in said note were duly made by the plaintiffs to the defendant Minot Building and Loan Association up to and including October 1st, 1935, and that the plaintiffs did not know, nor were they in any manner advised, concerning the application of such payments on the principal and interest, until just prior to the commencement of this action and long after October 25, 1935.

(5) That from April 9, 1929 to October 1st, 1935, the plaintiffs paid to the Minot Building and Loan Association upon their shares of stock the sum of $1,287.00, making the total amount paid by the plaintiffs to the defendant Minot Building and Loan Association on account of the said loan and stock to October 1st, 1935, the sum of $4,761.90. That during the month of October, 1935, the defendants required the plaintiffs to surrender their stock for cancellation and to have the avails thereof applied upon said loan for the purpose of permitting the Minot Building and Loan Association to qualify under the Federal law, and the plaintiffs consented to such cancellation. That from April 1929 to October 1935, the Minot Building and Loan Association, defendant, had allotted to the plaintiffs as dividends upon their stock the sum of $111.70, that upon the cancellation of the stock the defendants charged the plaintiffs' account with the sum of $82.50 membership fee of $2.50 per share of stock, and accredited to plaintiffs upon their note the sum of $1,316.20, instead of $1,398.70. That thereafter the plaintiffs paid to the defendant Minot Federal Savings and Loan Association the sum of $296.11 on account of principal and interest, and that the total amount paid for principal by the plaintiffs upon this loan is the sum of $3,300.00, and that the total amount of interest paid thereon is $1,869.71, and that such amount paid as inter-

est accruing to the dates and amounts paid constitutes interest upon said debt at approximately 12%, and in accordance with the stipulation of the parties to this action to at least 10¾% per annum.

(6) That such interest was collected and received by the defendant Minot Building and Loan Association with full knowledge that said rate of interest was at least 10¾% and that the defendant corporation intended to collect and receive interest at that rate.

(7) That under the practice of the defendant Minot Building and Loan Association borrowers were required to subscribe for certain stock designated as Class "AA," which stock was subject to a membership fee of $2.50 per share.

(8) That when plaintiffs applied for and received their loan, they understood they were to pay interest at the rate of 6.2% on the whole loan of $3,300.00 for the full period of the loan and that they further understood that the principal was divided into 120 payments of $27.50 each and the interest was payable in monthly installments of $17.05 for 120 months or until such time as the loan was paid; that had the payments of principal and interest been so applied, there would have been no usury, whatever, charged or collected until November 1932, and that only after that month would the monthly installment of $17.05 amount to more than 9% on the unpaid balance of the loan.

The findings and the record clearly establish the following facts:

1. That on April 9, 1929, the plaintiffs made a written application to the Minot Building and Loan Association for thirty-three membership shares to be issued for an eleven-year period, which application was accepted and is in part as follows: "I hereby apply for membership in the Minot Building & Loan Association and subscribe for 33 membership shares of Class A stock at $100.00 per share at maturity, subject to the by-laws, rules and regulations of said Association governing this stock."

2. That the plaintiffs as members of the Minot Building and Loan Association made an application for and received a loan and purchased stock in the defendant Association.

3. That the purported by-laws provided for no premiums; that the note executed and delivered by plaintiffs to the defendant Association provided for interest in excess of 9% per annum, which was then the

maximum legal contract rate, and that the note executed by the plaintiffs was usurious.

4. That all payments of interest made by plaintiff and claimed to be usurious under § 6076 of the Compiled Laws of North Dakota for 1913, were made subsequent to July 1st, 1931, the effective date of chapter 94 of the Session Laws of 1931.

At this point it should be noted that counsel for plaintiffs in his oral argument, as well as in his written brief, freely conceded that no usurious interest was paid until after the month of November 1932.

Since it is conceded upon the record that no usurious interest was paid by the plaintiff prior to November 1932, we are confronted with the question whether or not the usurious character of the payments is determined by the laws in force at the time of the execution of the contract between the parties, or by the laws in force at the time the payments were actually made.

The Legislative Assembly of 1931, enacted chapter 94, which is in effect a new statute governing and regulating building and loan associations in this state, and it repealed all former laws repugnant to and in conflict therewith.

Section 7 of chapter 94, supra, provides: "Every building and loan association is a creature of the law having certain powers and duties of a natural person, and as such has power. . . .

"(6) To assess and collect from members dues on shares and principal and interest on loans at the times and in the amount as provided for in the by-laws. Interest in no event to exceed twelve per centum per annum on the amount of the loan. Interest not exceeding one per centum per month may also be charged on delinquent payments or installments from time such delinquent payments or installments are due. No association. shall charge or collect from any shareholder, member or borrower, any fines, premiums or penalties of any kind whatsoever except as herein provided for delinquent payments or installments. Any officer, agent or employee of an association collecting or attempting to collect any penalty, fine or premium of any kind whatsoever, or any interest at a rate higher than provided by this act, except as herein provided for delinquent payments or installments, shall be guilty of a misdemeanor."

"(7) To assess and collect from members and others such dues and

principal and interest on loans made or advancements, as may be provided for in the by-laws. Such dues, interest, or advancements shall not be deemed usury, although in excess of the legal rate of interest. No association, its officers, agent, or employees, shall charge or collect a membership fee exceeding two per centum of the par value of each share."

In discussing § 6076, Compiled Laws of North Dakota for 1913, which prescribes the penalties for usury, this court, in Lindberg v. Burton, 41 N. D. 587, 171 N. W. 616, said: "It will be noticed that there are two entirely different provisions in Section 6076, supra, and that each part applies to a different condition. It is first provided that where usurious interest has been knowingly contracted for, but not paid, the entire interest on the note or other evidence of indebtedness is forfeited. It is next provided that where such usurious interest has been paid the person by whom it has been paid, or his legal representative, may recover back, from the person who has taken or received it, twice the amount of the interest paid, in an action commenced within two years from the time the usurious transaction occurred. The purpose and effect of statutory provisions similar to § 6076, supra, have been considered by many of the courts of this country, including the Supreme Court of the United States. And the authorities are generally agreed that the statute provides for two different contingencies, or two distinct classes of usurious cases, and prescribes a different penalty as to each class. They further agree that in cases falling within the first provision,—i. e., where usurious interest has been knowingly contracted for, but not paid,—all interest on the usurious obligation is ipso facto forfeited, the debtor can defend against any claim for interest, and the creditor can recover only the sum lent, without any interest whatever: But in cases falling within the second provision,—i. e., where the debtor has in fact paid interest upon the usurious contract,—he cannot plead such payment either as a credit on, or as an offset or counterclaim to, the principal; but his only remedy is to maintain the action to recover the penalty provided for in the second part of § 6076, supra."

Section 6076 of the Compiled Laws of 1913, is a copy of the statutes of the United States covering the matter of usury as applied to national banks. This statute was construed by the Supreme Court of

South Dakota in the case of McCarthy v. First Nat. Bank, 23 S. D. 269, 121 N. W. 853, 23 L.R.A.(N.S.) 335, 21 Ann. Cas. 437, and the same construction was placed upon this statute as was made by our Court in the case of Lindberg v. Burton. The case of McCarthy v. First Nat. Bank was appealed to the Supreme Court of the United States, and the decision of the South Dakota Supreme Court was affirmed. McCarthy v. First Nat. Bank, 23 S. D. 269, 121 N. W. 853, 23 L.R.A.(N.S.) 335, 21 Ann. Cas. 437, 223 U. S. 493, 56 L. ed. 523, 32 S. Ct. 240.

In the course of the opinion the Supreme Court of the United States said: "But when the debtor actually makes a payment, as interest, and the bank knowingly receives and appropriates it as such, the usurious transaction is complete, the right of the one and the liability of the other is fixed, the cause of action arises, and the statute of limitations begins to run."

See also Waldner v. Bowden State Bank, 13 N. D. 604, 102 N. W. 169, 3 Ann. Cas. 847.

Section 7316, Comp. Laws. N. D. 1913, provides that: "The repeal of any statute by the legislative assembly shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

The above section has been held to apply to penalties *incurred* under the usury statutes. National Bank v. Lemke, 3 N. D. 154, 54 N. W. 919; McCann v. Mortgage, Bank & Invest. Co. 3 N. D. 172, 54 N. W. 1026.

No person has a vested right in an unenforced penalty. Anderson v. Byrnes, 122 Cal. 272, 54 P. 821.

In Fenton v. Markwell & Co. 11 Cal. App. (2d) 755, 52 P. (2d) 297, the plaintiff sought to recover under the usury law treble the sums paid for interest. After holding that the constitutional provision fixing the maximum rate of interest but exempting building and loan associations, banks, pawnbrokers, etc., repealed an earlier usury law, the court considers the effect of such repeal upon the right to recover treble the sums of interest payments made both before and after

the repeal in accordance with the provisions of a contract which was made prior to the repeal and was usurious when made. The court says, "A portion of the interest sued for was paid after this repeal, and plainly plaintiff can found no rights on that payment."

In Engle v. Shurts, 1 Mich. 150, which was an action in chancery to foreclose a mortgage, the defense was interposed that at the time the mortgage was made it was usurious. It appeared that at the time of the trial the statute imposing a penalty for taking usurious interest had been repealed. The court held that the penalty was no longer recoverable.

In the case of Petterson v. Berry (C. C. A. 9th) 125 F. 902, an action was brought on a note which provided for interest at the rate of 12%. The maximum rate of interest allowed by law when the note was executed was 10%. The penalty prescribed for charging usurious interest was forfeiture of the entire debt. Prior to the time that action was brought upon the note, the law had been changed, making the maximum contract rate of interest 12%. The defense of usury was interposed upon the grounds that the note was usurious in its inception. In passing upon the question the court said: "It is well settled that the defense of usury, either to the principal of a contract debt or to the interest thereon, is in the nature of a penalty or forfeiture, which may be taken away by legislation, both as respects previous as well as subsequent contracts."

The court then quotes at length from Ewell v. Daggs, 108 U. S. 143, 27 L. ed. 682, 2 S. Ct. 408.

In Coe v. Muller, 74 Fla. 399, 77 So. 88, the court held that the repeal of usury laws without a saving clause operates retrospectively so as to cut off the defense of usury for the future, even in actions upon contracts previously made. In that case it is said, "there seems to be little, if any, conflict in the authorities on the doctrine that where a usury statute does not declare the contract or any part of it void, but imposes a penalty of forfeiture of the whole or any part of the interest if the borrowers sees fit to avail himself of the defense of usury, its repeal without a saving clause operates retrospectively so as to cut off the defense of usury for the future, even in actions upon contracts made while the law was in operation." See also note on

"Modification or Repeal of Usury Statute as Affecting Existing Usurious Contract," 87 A.L.R. 470.

The contract involved in the present action was entered into by the plaintiffs and defendants on April 9, 1929. The contract is in the form of an application for membership in Minot Building and Loan Association and the plaintiffs applied for 33 membership shares. The application was accepted and approved, and under the terms thereof, the plaintiffs obtained a loan in the sum of $3,300.00, such loan to be repaid in 120 monthly installments. The contract remained in full force and effect after the effective date of chapter 94, of the Session Laws of 1931, the plaintiffs making installment payments thereunder which were received by the defendants.

The respondents contend, however, that the defendant has failed to comply with the provisions of chapter 94, of the Session Laws of North Dakota for 1931, which provide that every association now organized and existing under the laws of this state, shall within three months after this act takes effect, submit its by-laws to the State Banking Board for approval. Respondents further contend that since the answer alleges that the defendant is a building and loan association organized under and governed by the provisions of chapter 26 of the Civil Code of North Dakota, it, the defendant, cannot now avail itself of the provisions of chapter 94, supra. The plaintiffs in their complaint, however, allege that the Minot Building and Loan Association was during all of the times mentioned in the complaint, at least for certain purposes, a corporation existing under the laws of the State of North Dakota.

There is no allegation in the complaint that the defendant has not complied with the requirements of chapter 94, supra, nor is there any evidence in the record to that effect. Neither is there any showing that any proceeding was brought by the state to dissolve the defendant corporation for failure to comply with the requirements of said chapter 94.

It is well established that it is the duty of the courts to take judicial notice of existing laws and to apply such laws to issues within the provisions thereof. Said chapter 94 replaces former laws regulating building and loan associations and repeals all acts or parts of acts repugnant to and inconsistent therewith. It provides a method by

which existing building and loan corporations may comply with its provisions and continue to operate without interruption. The defendants continued their business as a building and loan association after the effective date of said chapter 94, supra, and until the time of trial without objection on the part of the plaintiffs; likewise, the plaintiffs continued to make installment payments under their contract after the effective date of chapter 94, and to all intents and purposes were and continued to be members of the defendant Building and Loan Association. The plaintiffs having brought this action to recover penalties for usurious interest charges alleged to have been made by the defendant, they may not, therefore, in the same action by collateral attack challenge the status of the defendant as a building and loan association.

A member of a building and loan association who enters into a contract with it, by which he receives a benefit, cannot, under the principles governing all corporations, deny its existence. Robertson v. American Homestead Asso. 10 Md. 397, 69 Am. Dec. 145, and note. See also 9 Am. Jur. Building and Loan Associations, p. 126, § 38.

In 12 C. J. S. § 8, p. 407, dealing with building and loan associations, we find the following language: "Members who have acted as such are estopped to deny the incorporation of the association, . . . and it may be said generally that anyone who has dealt with the association in its corporate capacity, and who has received the benefits of the transaction, is under a like disability. In other words, where the association exists as a de facto corporation, no one but the state may call its de jure existence into question. Accordingly, in a suit between an association having a de facto corporate existence and an individual litigant, the latter may not question the corporate existence of the association because of its failure to conform to statutory requirements as to the filing of its final certificate of organization, or the acknowledgment of its certificate of incorporation. . . ." See also U. S.—Deitch v. Staub (C. C. A. 6th) 115 F. 309; Holmes v. Royal Loan Asso. 128 Mo. App. 329, 107 S. W. 1005; Livingston Loan & Bldg. Asso. v. Drummond, 49 Neb. 200, 68 N. W. 375.

Said chapter 94 provides that building and loan associations may assess and collect from members dues on shares and principal and interest on loans at the times and in the amount as provided for in the by-laws. Interest in no event to exceed 12% per annum on the

amount of the loan. Said statute further provides that such dues, interest or advancements, shall not be deemed usury, although in excess of the legal rate of interest.

It is true that by its terms the contract involved in this action was usurious in its inception. However, as we have pointed out, the penalty for usury could not . accrue until the usurious payments were made and received. We think that proposition is well established by the authorities cited in this opinion. Since the payments made by the plaintiffs and by them claimed to be usurious were not made and received until after the effective date of chapter 94, supra, the exemptions granted to building and loan asscoiations from usury laws by said chapter 94 would, therefore, apply to the transactions between the plaintiffs and defendants, provided the interest did not exceed 12% per annum.

The final question to be determined then is whether or not the interest paid by the plaintiffs and received by the defendants exceeds the limitation of twelve per cent imposed by chapter 94, supra. Exhibit "E" is an itemized statement of all of the payments made by the plaintiffs and this statement shows the exact amount of interest and principal paid each month. The adjustment of the principal and interest payments was made quarterly, that is, the same amounts of interest and principal were paid for three successive months. An adjustment was then made by which the principal payment was increased and the interest payment decreased and this method was followed until the seventy-eighth monthly payment, which was October 2nd, 1935. The loan was finally paid and liquidated on March 4th, 1936. In the final payment the plaintiffs were given credit for the total amount of payments made upon their stock. The interest rate charged and paid in the case before us does not in any event exceed 12 per centum per annum, and therefore is not in excess of the limitation imposed by chapter 94, of the Laws of North Dakota for 1931.

The judgment of the District Court is reversed and the action dismissed.

Burr and. Morris, JJ., and Grimson and Swenson, Dist. JJ., concur.

CHRISTIANSON, Ch. J., and NUESSLE, J., being disqualified, did not participate, Hon. P. G. SWENSON, Judge of First Judicial District, and Hon. G. GRIMSON, Judge of Second Judicial District, sitting in their stead.