## NORTHERN BUILDING & LOAN ASSOCIATION AND OTHERS v. JAMES M. WITHEROW AND ANOTHER.[1]

June 9, 1939.

No. 32,025.

*James M. Witherow,* for appellants.
*Kerr, O'Neill & Dudley* and *Edgar E. Sharp,* for respondents.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order denying defendants' motion for a new trial.

The action was instituted to foreclose a real estate mortgage given by James M. Witherow and wife to the Northern Building & Loan Association to secure the repayment of a loan of $3,900. Two

[1]Reported in 286 N. W. 397.

transactions are involved. In 1930 defendants borrowed $4,000 from the association. As required by the articles and by-laws of the latter, they subscribed for 40 shares of its stock when application for the loan was made. A mortgage was given to secure the loan, and the stock was pledged as additional security. There was deducted from the loan $80 as a non-withdrawable membership fee,. $40 representing a commission of one per cent on the face amount of the loan, and other miscellaneous expenses representing mortgage registration tax, cost of abstract, expense of recording mortgage, and a small attorney's fee for examination of title.

Defendants made all required payments on the bond given in exchange for the loan until about October, 1932. At that time they had a credit of $581.84 in their favor. Thereafter they defaulted in their payments. After negotiations for refinancing, payment of back taxes by the association, and application of the credits, a new arrangement was contrived whereby the association canceled one share of the stock for which defendants had subscribed; a new certificate for 39 shares was issued to defendants and assigned by them. as security for a bond in the amount of $3,900; the bond was also secured by the mortgage here in question. The following provisions. are contained in the bond:

"We—I agree to pay on the first day of each and every month, commencing on the first day of December, 1935, and continuing until the whole of said principal sum and interest shall be paid, the sum of not less than Forty-two and 90/100 ($42.90) Dollars. This. amount shall be applied by the association as follows:

"1. To the payment of said agreed interest.

"2. To the payment of taxes, insurance premiums or other advancements made by the Association.

"3. The balance to be credited as dues on the stock aforesaid, with the right, but not the obligation, to the Association to thereafter apply any and all of said balance theretofore credited as dues to the first and (or) second allocations upon default by the undersigned under this bond or the mortgage—contract for deed securing: it. When said dues are thus paid in full, so that One hundred.

($100.00) Dollars has been paid and ultimately applied upon each share of said loan stock, the stock shall be canceled and retired and this note and the other security shall be satisfied.

"Whenever the amount of dues paid and ultimately applied on said unpaid stock, as aforesaid, shall equal the sum of One hundred ($100.00) Dollars, the said amount shall be applied in reduction of the principal sum of this Bond, whereupon said agreed interest shall thereafter be computed and paid upon the unpaid balance of said principal sum as reduced by such payments."

In 1937 a federal charter was obtained by the association, and thereafter it assumed the name "Northern Federal Savings and Loan Association." During the same year defendants' bond and mortgage were assigned to certain trustees, who, together with the association, are plaintiffs in this action.

Claiming that defendants were again in default, plaintiffs instituted this action to foreclose the mortgage in March, 1938. The complaint alleged that the default consisted of their failure to pay a balance of $14.82 due on December 1, 1936, sums of $42.90, each of which became due on the first day of every month thereafter, amounting in the aggregate to $658.32; and taxes for the year 1933 amounting to $180.95. The total amount of principal and interest claimed was $3,548.53.

The defense rests upon three propositions: (1) That the Northern Building & Loan Association was not a *bona fide* building and loan association and therefore not entitled to the benefits of the statutes enacted for the protection of such associations; (2) that usury vitiated the entire transaction; and (3) that defendants are in default only because plaintiffs overcharged them and failed to give proper credit for payments made.

■ The trial court found as a fact that the Northern Building & Loan Association, at the time the note (or bond) and mortgage here involved were given and thereafter until January 11, 1937 (the date it federalized), was "a corporation duly created as and constituting a bona fide 'building and loan association' so-called, and organized under the laws of the state of Minnesota relating to

and affecting building and loan associations." While the complaint fails to allege in so many words that it is such an association and although its articles of incorporation were not offered in evidence, there was nevertheless sufficient evidence upon which the finding referred to might rest. The association was under the supervision of the banking department of the state at all times. It described itself as a building and loan association in its relations with defendants. Shares were allocated to persons who sought and obtained loans. Defendants treated it as such an association. They executed the bond and mortgage naming it as such. Defendant James Witherow voted the shares allocated to him by proxy and accepted dividends paid by the association. There is nothing in the record indicating that the association had failed to comply with any of the statutory conditions precedent to obtaining a certification authorizing it to do business. We conclude, therefore, that the finding is substantiated by the evidence.

Further, defendants are not in a position to question the corporate character of the Northern Building & Loan Association. If a member of a building and loan association has acted with the corporation, treating it as a corporation, and has borrowed money from it, he is estopped in a suit to foreclose a mortgage from setting up that it was not a corporation because the law was not fully complied with in its organization. West Winsted Sav. Bank & Bldg. Assn. v. Ford, 27 Conn. 282, 71 Am. D. 66; Washington Inv. Assn. v. Stanley, 38 Or. 319, 63 P. 489, 58 L. R. A. 816, 84 A. S. R. 793. The rule is that a member of a building and loan association who receives a benefit by a contract with the association cannot deny its existence. Cloone v. Minot B. & L. Assn. 68 N. D. 543, 282 N. W. 441; 12 C. J. S., Bldg. and Loan Assns. § 8, and cases cited. And in this state it has been held that a mortgagor against whom an action is brought to recover a deficiency judgment is, "upon the plainest principles of justice, estopped from urging the plea of *ultra vires,* which is not permitted to prevail in cases of executed contracts, either for or against a corporation, where it would not advance justice, but, on the contrary, accomplish a wrong, under the forms of law." Central B. & L. Assn. v. Lampson,

60 Minn. 422, 423, 62 N. W. 544, 545. These decisions appear amply to support the conclusion that one who has given a mortgage to·a building and loan association as security for money loaned to him cannot, when action is brought to foreclose, deny that the mortgagee is a *bona fide* building and loan association.

■ Having determined to consider the association as a *bona fide* building and loan association, we cannot treat the transaction as vitiated by usury. Such associations are by statute exempt from the operation of the usury laws. 2 Mason Minn. St. 1927, §§ 7041, 7754. This exemption has been held constitutional. Zenith B. & L. Assn. v. Heimbach, 77 Minn. 97, 79 N. W. 609.

■ We now consider the claim that defendants are in default only because of improper accounting on the part of the association. The mortgage given in 1930 provides:

"We further promise to pay, on the first day of each and every month, commencing on the first day of June, 1930, the sum of not less than $48, of which amount the sum of $20 is agreed interest, and $8 is premium. The amount paid each month is to be applied by said Northern Building and Loan Association as follows: First: to the payment of said agreed interest. Second: To the payment of said premium. Third: To the payment of taxes, insurance premiums, or other advancements made by the payee. Fourth: The balance to be credited as dues on the stock aforesaid, with the right to the payee to thereafter apply any or all thereof to the first, second or third allocations upon default of the undersigned under this Bond or the Mortgage securing it. We promise to pay in the aforesaid installments each and every month until such time as the amount of dues paid and applied on said stock, and the dividends earned and credited thereon, shall equal the principal sum of $4,000, but nothing herein contained shall be construed to extend the maximum maturity of this Bond beyond eleven years."

It is claimed by appellants that interest payments should have decreased as payments were made on the shares and that the amount paid as premiums should have been deducted from the amount due for shares. The terms of the agreement do not lend themselves to

this construction. Further, defendants must have known the manner in which the monthly payments were being applied at least by 1933 when the loan was refinanced. Their failure to object indicates an understanding of the meaning of the provisions of the mortgage quoted above.

At the time the first loan was made defendants were charged $120 for services rendered by the association. They now claim that this charge was excessive. It has been eight years since the sum was taken by the association. The propriety of so doing was never questioned until the present action was instituted. Defendants are now precluded from objection because of· laches.

The note given in 1933 has been previously set out. It is contended with reference thereto that the principal debt on which interest was payable should have been reduced as soon as payments for shares were made. Reduction was in fact made by canceling a share whenever payments amounted to $100. The last mentioned practice was in accord with the clearly expressed provisions of the note and affords no ground for complaint.

Finally, appellants argue that the association failed to pay dividends in satisfactory amounts. They contend that certain directors stripped the association of profits which should have gone to the shareholders by means of a so-called "Founders' Agreement." This agreement was a contract whereby certain persons therein named agreed to pay the operating expenses of the association in exchange for an amount not to exceed two per cent of its annual assets. The record discloses that the "founders" lost money in complying with the agreement. Therefore the net assets of the corporation were increased rather than depleted because of this contract.

We conclude that the association was a *bona fide* building and loan association; that, if it is not, defendants are estopped from so asserting; that the association gave defendants proper credit for payments made by them. According to the accounts of the association, defendants were clearly in default. Having considered the claims of unjust treatment advanced by defendants, we conclude that they are not such as to justify us in reversing the trial court.

Affirmed.

Mr. Justice Loring took no part in the consideration or decision of this case.

Mr. Justice Hilton, being incapacitated by illness, took no part.