## STATE v. RAYMOND RIVERS.[1]

October 13, 1939.

No. 32,122.

———

[black bars]

———

[1]Reported in 287 N. W. 790.

86

*Albert Mohn,* for defendant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, and *Milton I. Holst,* County Attorney, for the State.

GALLAGHER, CHIEF JUSTICE.

Defendant, a resident of Goodhue county, this state, on an information made and filed by the county attorney of that county, was convicted of violating 2 Mason Minn. St. 1927, § 10395, by disposing of certain mortgaged personal property consisting of five head of cattle without the written consent of the mortgagee.

After conviction and on defendant's request, the trial court, pursuant to 2 Mason Minn. St. 1927, § 10756, reported the case to this court and certified for decision the following questions:

1. Is the chattel mortgage, exhibit "B," which was executed in the state of Wisconsin with the full knowledge of the mortgagor and mortgagee that the personal property covered by it was purchased at an auction to be immediately taken to mortgagor's residence in Goodhue county, Minnesota, where such mortgage was also filed, a Minnesota or Wisconsin contract?

2. If governed by the Wisconsin statutes, was the contract void or enforceable under the laws of Wisconsin so far as this report shows what such laws were?

3. If such contract is void or unenforceable under the laws of Wisconsin, can such contract be made the basis of the prosecution and conviction of defendant in the case at bar?

4. If governed by the Minnesota statute, was this contract void under the laws of Minnesota?

5. Is the presumption that it is presumed that the parties intended this contract to be governed by the laws of the state where it would be enforceable (if it appears that it would be enforceable in Wisconsin) applicable to this case so as to outweigh the presumption of innocence?

6. Can a usurious Wisconsin contract, declared by the statutes of Wisconsin to be unenforceable, be made the basis of a prosecution under the statutes of Minnesota, which declare a usurious contract to be void?

7. Did the court err in denying and overruling defendant's motion to direct the jury to bring in a verdict of not guilty for defendant and denying the defendant's motions to set aside the verdict and dismiss the action on the grounds set forth in exhibit "E"?

8. Was subd. 9 of § 115.09 of the Wisconsin statutes, 1937, applicable to the Thorp Finance Company, it being conceded that there was no proof offered on the trial that said Thorp Finance Company had complied with subds. 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12,

and 13 of such section of the Wisconsin statute and it being the contention of the state that said chattel mortgage is not void but only unenforceable under said subd. 9?

9. In this case, the state introduced no evidence to show that the mortgagee corporation had complied with Wisconsin statutes, 1937, § 115.09, subds. 1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, and 13, exhibit "F," or any other Wisconsin statute authorizing such corporations to do business. The questions presented in this situation are:

(a) Does any presumption claimed by the state to establish guilt outweigh the presumption of innocence?

(b) As a matter of law, is evidence, based upon such presumptions, sufficient to establish defendant's guilt beyond a reasonable doubt?

(c) Have the essential ingredients of the crime charged, for the proof of which such presumptions are relied on, been proven beyond a reasonable doubt?

It appears from the record certified by the trial court that defendant attended an auction sale at Durand, Wisconsin, and there purchased five head of cattle and two horses for which he agreed to pay the sum of $365. Of this sum he made a down payment of $91.25 and negotiated a loan with Thorp Finance Corporation out of which the balance of the purchase price was paid. He gave to that company a note for $281.69 and secured its payment by a chattel mortgage on the stock so purchased. The material parts of the note and mortgage read:

"$281.69                                    Thorp, Wis., 9-4-1937

"For value received, I promise to pay to the order of THORP FINANCE CORPORATION, at its office, Thorp, Wisconsin, the sum of Two Hundred Eighty One and 69/100 Dollars with interest thereon, at the rate of 10 per cent per annum on all overdue payments hereon * * * payable $46.95 monthly on the 4 day of each month, beginning Oct. 4-1937.

"* * * to secure the payment of the foregoing note, or any renewal thereof, the undersigned hereby mortgages to the holder of the following personalty, to-wit:

"1 Guernsey Cow, Ear Tag #87352
"1 Holstein    "    "    "    79443
"1 Roan       "    "    "    98419
"1 Guernsey Heifer, 2 Yr. Ear Tag 79476
"1 Pure Bred Holstein Bull E. H. 68184, 1 yr. old
"1 Black Mare #1400 SM
"1 White Gelding #1400 SM

\* \* \*

"Francis J. Conway          Raymond Rivers
"R. L. Baldwin             Goodhue County, Welch Town,
                                    "Minnesota."

The note and mortgage is for $7.94 more than the balance needed to pay for the property purchased at the auction. Defendant claims that this item represents an usurious interest charge included in the note. While the certificate is silent on that question, we assume that there must have been evidence to that effect.

After the execution of the note and mortgage the property purchased was, with the knowledge and consent of the mortgagee, moved to defendant's farm in Goodhue county and a part thereof later disposed of without the written consent of the mortgagee, resulting in the prosecution herein involved.

In submitting the first question the trial court seeks to find whether the law of Minnesota or of Wisconsin is to be applied in considering defendant's contention that the mortgage was void because the note secured thereby was usurious. The questions certified disclose that neither the parties nor the court considered the mortgage void or unenforceable for any other reason. 2 Mason Minn. St. 1927, § 7036, prohibits the charging of interest at a rate greater than eight per cent, and § 7038 provides that any contract whereby a greater rate of interest than eight per cent is charged shall be void. It is therefore clear that if the contract in question is governed by Minnesota law it is usurious and therefore invalid because the sum of $7.94 claimed to be included in the note as advance interest on deferred payments would exceed a rate of eight per cent permitted by statute in this state.

Several theories have been advanced for use in deciding the law to be applied in ascertaining the validity of a contract having contacts in more than one state. Beale, "What Law Governs the Validity of a Contract," 23 Harv. L. Rev. 260; McClintock, "Conflict of Laws as to Contracts: Minnesota Decisions," 10 Minn. L. Rev. 498, 505; *Id.*: "The Restatement and Minnesota Decisions Compared," 13 Minn. L. Rev. 538, 543. It appears that our decisions, considered as a whole, support the proposition that generally the law to be applied in cases where the issue of usury is raised is that intended by the parties (Smith v. Parsons, 55 Minn. 520, 57 N. W. 311; Jenkins v. Union Sav. Assn. 132 Minn. 19, 155 N. W. 765), and that in the absence of evidence of express intent it will be presumed that the parties intended to be applied either the law of the place of performance of the contract questioned on the ground of usury (Ames v. Benjamin, 74 Minn. 335, 77 N. W. 230; Patterson v. Wyman, 142 Minn. 70, 170 N. W. 928) or the law of that one of the states having contacts vital to the transaction which would make the contract enforceable. Green v. N. W. Trust Co. 128 Minn. 30, 150 N. W. 229, L. R. A. 1916D, 739; Mueller v. Ober, 172 Minn. 349, 215 N. W. 781; Moller v. Sybilrud, 180 Minn. 326, 230 N. W. 812. These presumptions are inferences drawn by the courts because of a belief that the parties, if they thought about the matter one way or another, would have chosen the law of the state where the acts contemplated by the contract were to be done as the law to be applied in deciding whether or not the parties could enter into a binding contract for the doing of those acts and the further belief that the parties would not have intended to enter into a contract having no legal force.

Defendant urges that because the mortgagor resided in Minnesota and the mortgagee knew that he' intended to take the cattle to his farm in Goodhue county and consented thereto the note and mortgage are subject to the usury statutes of Minnesota. With this we do not agree. The cattle were located in Wisconsin at the time of the execution of the note and mortgage which were given in that state. The note and mortgage are written on a

Wisconsin form, and the mortgagee named therein is represented to be a Wisconsin corporation. The note specifically provides that it is to be paid at Thorp, Wisconsin. These facts, taken in connection with the presumption recognized in our decisions and so well enunciated in Mueller v. Ober, 172 Minn. 349, 215 N. W. 781, that the parties intended to contract with reference to a law that would uphold their contract rather than one that would nullify it, leads us to the inevitable conclusion that the parties intended that their contract be governed by the Wisconsin laws.

Defendant contends that Swedish-American Nat. Bank v. First Nat. Bank, 89 Minn. 98, 94 N. W. 218, 99 A. S. R. 589, is authority for holding the mortgage to be a Minnesota contract. That case involves the validity of a pledge of property represented by warehouse receipts and given to secure promissory notes. The validity of the warehouse receipts as pledges was considered without reference to the validity of the notes secured. Finding no expression of intention by the parties as to what law should govern the receipts, the court resorted to the presumption that they intended the law of the place of performance to apply, decided that the place of performance of the contracts of pledge was in the state where the property represented by the receipts was located, and adopted the law of that state to determine the validity of the contracts of pledge.

The instant case is distinguishable by reason of the fact that the validity of the mortgage is not here questioned except insofar as it is claimed that the note which the mortgage was given to secure is void. The importance of the distinguishing factor is realized when we note that even in the case cited and relied upon by defendant the court considered the problems unrelated. On page 112 of that opinion (89 Minn., 94 N. W. 218) the court states that the principal contract might be said to be governed by the law of Massachusetts because payable and to be performed there. And on page 114 of the opinion, in referring to Ames v. Benjamin, 74 Minn. 335, 77 N. W. 230, the court said:

"In that case, defendant, a resident of this state, made and delivered to plaintiff his promissory note payable at Wahpeton, in

the state of North Dakota, to secure the payment of which he executed a chattel mortgage upon property *situated in this state*. In an action in replevin by the mortgagee for the mortgaged property, brought in this state, in which the mortgagor interposed the defense of usury, the court held that the validity of the contract was to be determined by the laws of the state of North Dakota, because that was the place of performance. No objection was made to the validity of the mortgage aside from the claim that it was void because it secured the payment of a promissory note void for usury."

If the position of the defendant is sound, this court would have decided in the Ames case that the validity of the mortgage was to be determined by the law of Minnesota even though no objection was made thereto other than the usurious character of the note secured.

■ The contract was enforceable. From the certified record it appears that Rivers obtained a credit of only $273.75 in exchange for the note and mortgage by the terms of which defendant promised to pay $281.69. From this we infer that the Thorp Finance Corporation charged $7.94 either as a fee for its services or as interest for the money loaned. For present purposes we will assume that the amount was deducted as interest. In addition, the note provides for the payment of interest on overdue payments at the rate of 10 per cent per annum.

Section 115.05 of the Wisconsin Statutes, 1935, provides:

"No person, company or corporation shall, directly or indirectly, take or receive in money  *  *  *  any greater sum  *  *  *  for the loan or forbearance of money  *  *  *  than at the rate of ten dollars upon one hundred dollars for one year;  *  *  *."

If the installments provided for by the terms of the note were paid as they fell due, the amount deducted as interest would not be greater than "at the rate of ten dollars upon one hundred dollars for one year." The interest on overdue payments as fixed by the terms of the note is not greater than that permitted by the statute. Each interest charge covers a different period of time,

and neither is objectionable on the grounds of usury. The provisions of the above mentioned law were not violated. The claim of defendant that the interest charged amounts to 15.2 per cent a year overlooks the fact that the amount discounted was for interest before the installments became due while the amount charged according to the terms of the note was for interest after the installments became due.

■ Our answer to questions 1 and 2 makes answers to questions 3, 4, and 6 unnecessary.

■ The fifth question is to be answered in the negative because the presumptions invoked to determine the law to be applied in deciding the issue of usury are not balanced against the presumption of innocence. The former are used to determine the intent of the parties to the contract at the time it was made. Subsequent events cannot change this intent. With reference to the case before us, the fact that Rivers was tried for disposing of the property in violation of 2 Mason Minn. St. 1927, § 10395, does not in any way alter the rule that the intent of Rivers and the Thorp Finance Corporation at the time the note and mortgage were executed and delivered is to determine the law to be applied in resolving the issue of usury nor in any way affect the judicially drawn inferences which are used to find this intent when it is not expressed. The "presumption of innocence" has no relation to this process. It is but a phrase used to caution jurors that they are not to infer that the defendant committed the criminal acts charged against him merely because he has been brought to trial. State v. Sailor, 130 Minn. 84, 153 N. W. 271. Applying this "presumption" to the instant case, the court would instruct the jury that the defendant was not to be convicted unless they believed beyond reasonable doubt that he had removed and disposed of mortgaged property without the consent of the mortgagee; that their belief was to be based on the evidence; and that in the absence of evidence of the criminal acts charged the defendant is presumed to be innocent. The matters covered by such a charge would be events occurring after the mortgage was given and would in no way affect the intent of the parties at the time

of the contract. The function of each presumption is distinct, and neither encroaches upon the other.

■ Since the motions referred to in question 7 were based on the claim that the mortgage was void because usurious, our answers to questions 1 and 2 dispose of the problem. We reply in the negative.

■ Referring to the eighth query, it was necessary for the state to prove that the property in question was mortgaged. A note and mortgage signed by defendant were introduced in evidence. We assume for present purposes that this mortgage covered property removed and disposed of by defendant as charged in the information. If the mortgage could have been enforced by the mortgagee or its assigns in a civil action, the property was mortgaged within the meaning of the statute. It could not be enforced in a civil action if it were established that the note secured was usurious under the laws of Wisconsin as well as Minnesota. A section of the Wisconsin statutes (§ 115.05, Wis. Stat. 1935) set out above, regulates the rate of interest to be charged by persons, companies, and corporations. As was pointed out in answer to question 2, the note secured by the mortgage here involved was not usurious under this section. Therefore, regardless of who had the burden of proving usury or the absence of it, the above mentioned section settled the matter. While loan associations organized under § 115.09, subds. 1 to 13, are subject to somewhat different restraints against usury, the rate permitted is not less than that permitted by § 115.05. If the note were usurious under the latter but not under the former, the question of whether or not the former was applicable to the Thorp Finance Corporation might be important. Such is not the case. We conclude that § 115.05 regulated the corporation and that the applicability of § 115.09, subds. 1 to 13, is immaterial.

■ Coming now to the ninth question, we are faced with this problem: Was it necessary for the state to prove that the mortgagee named in the note was properly incorporated and authorized to do business, and, if such had to be established, could the state rely on a presumption of compliance in the absence of proof?

It is our opinion that no proof was necessary because the fact in question was immaterial. Once again we recall that the state had merely to prove that the property was mortgaged and that it was mortgaged within the meaning of the crime charged if enforceable in a civil action. It could have been enforced in a civil action without proof that the Thorp Finance Corporation was duly incorporated and authorized to do business. One who has entered into a contract with another acting as a corporation and has thereby obtained an advantage under the contract cannot question the corporate character of the "corporation." Continental Ins. Co. v. Richardson, 69 Minn. 433, 72 N. W. 458; 2 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 1983, and cases cited; Northern B. & L. Assn. v. Witherow, 205 Minn. 413, 286 N. W. 397. The note and mortgage here involved specifically provided that the money was payable to the "Thorp Finance Corporation." If it or its assigns sought to foreclose, the mortgagor would be estopped to deny the validity of the mortgagee's incorporation. Thus it appears immaterial whether or not the mortgagee was properly incorporated or authorized to do business. Therefore the state did not have to prove that the Thorp Finance Corporation had complied with pertinent laws. There was then no need for the application of presumptions in this respect. Consequently question 9 need not be answered.

The question certified being thus answered, the case is remanded to the district court.

Remanded.