ARBO CORPORATION, Plaintiff,

v.

AIDAN MARKETING/DISTRIBUTION, INC., a Minnesota corporation, in its own name and d/b/a Aidan Distribution, Inc., Millie Engborg, individually and d/b/a Aidan Distribution, Inc., Defendants.

Civ. No. 4–85–692.

United States District Court,
D. Minnesota,
Fourth Division.

July 28, 1986.

Michael A. Pysno, Dorsey & Whitney, Minneapolis, Minn., for plaintiff.

George R. Serdar, Bowman & London, Ltd., St. Paul, Minn., for defendants.

DIANA E. MURPHY, District Judge.

Plaintiff Arbo Corporation (Arbo), a Washington corporation, brought this diversity action against Aidan Marketing/Distribution, Inc. in its own name and d/b/a Aidan Distribution, Inc. (hereinafter Aidan), and Millie Engborg, individually and d/b/a Aidan Distribution, Inc. Arbo seeks to recover for goods sold and delivered to Aidan. The parties have settled all of the issues in this case except one: Whether or not Mille Engborg is liable individually for any portion of Arbo's claim. Waiving their right to a jury trial on this issue, they submit the question to the court on the following stipulated facts.

I.

Arbo is a Seattle-based manufacturer of computer cables. Aidan, a Minnesota corporation, was established to be a distributor of computer cable products in Minnesota and other midwestern states. De-fendant Engborg was and is president of Aidan.

The parties agree that the plaintiff is owed $44,857.90. Either Aidan is liable for the total, or Millie Engborg is responsible for $17,943.16 and Aidan for the remaining $26,914.74.

Arbo and Aidan established a manufacturer-distributor relationship in June, 1984. At that time, Millie Engborg, the person who established Aidan, traveled to Arbo's headquarters in Seattle to discuss details of the proposed relationship between Arbo and Aidan. When she met with Brian Arbo, the president of Arbo, Engborg was asked if she had formed a corporation. She stated that a corporation had not yet been formally created, but it was "in process."

After Engborg returned to Minnesota, she had other telephone conversations with Arbo personnel. During one conversation she was asked by Brian Arbo whether she had formed a corporation. Again, she stated that the corporation had not been formally established, but was "in process." Thereafter, some time in mid–1984, Engborg advised Arbo personnel that products shipped from Arbo to Aidan should be invoiced to "Aidan Distribution Corporation."

Aidan received its first shipments from Arbo on August 16, 1984 and its final shipments on December 28, 1984. The amounts allegedly due for these shipments are the basis of the plaintiff's claims.

All Arbo invoices were directed to "Aidan Distribution Corporation" at Aidan's business address, 10828 Normandale Boulevard, Bloomington, Minnesota. All correspondence from Arbo was directed to Aidan at its business address in Bloomington. All payments to Arbo from Aidan were made on Aidan checks out of Aidan bank accounts. Aidan made payments on November 12, 1984, December 19, 1984, December 27, 1984, December 29, 1984, January 4, 1985, January 8, 1985, January 16, 1985, and January 31, 1985.

No shipments of Arbo goods were ever sent or delivered to Engborg's personal

residence. No correspondence from Arbo was ever directed to Engborg personally at her residence. Arbo personnel never made statements prior to the commencement of this lawsuit that Engborg was personally responsible for any debt to Arbo. Engborg never submitted personal financial statements to Arbo.

Aidan's Articles of Incorporation were filed with the Minnesota Secretary of State on November 27, 1984.

## II.

■ Under Minnesota law, a party who has contracted with another acting as a corporation is usually estopped from questioning the corporate character of the "corporation." *E.g. State v. Rivers,* 206 Minn. 85, 287 N.W. 790 (1939). Thus, a creditor who has dealt with a de facto corporation in its corporation name and capacity, and has given credit to it and not to its officers or stockholders, cannot, absent fraud, charge them with the debts of the corporation. *E.g. Richards v. Minnesota Savings Bank,* 75 Minn. 196, 77 N.W. 822 (1899).

Plaintiff acknowledges this general rule, but contends that the estoppel defense does not apply when its operation would be inequitable. It cites *John L. Whiting & Sons Co. v. Barton,* 204 Mass. 169, 90 N.E. 528 (1910), for authority that there can be no estoppel when an incorporator's actions create the mistaken notion that a corporation exists. This case is distinguishable on its facts, however. In *Barton,* the defendant incorporator represented to plaintiff's officer that the corporation was formed when it had not yet been organized and never was organized. In the case before the court, no such affirmative misrepresentations occurred. Engborg stated forthrightly on two separate occasions that the corporation had not yet been created, but was "in process." Arbo was thus aware that Aidan was not formally incorporated. Despite this knowledge, Arbo directed all its communications to Aidan at its corporate address and not to Engborg personally. Arbo did not check Engborg's financial status or suggest in any way that Engborg was to be personally responsible for the debt. Moreover, unlike the corporation in

*Barton,* Aidan was subsequently formally established in the State of Minnesota. Under these circumstances, the court finds that plaintiff may be equitably estopped from pursuing claims against Engborg individually.

■ Plaintiff further contends that the estoppel defense only applies when the estopped party has obtained some advantage by dealing with the corporation. It asserts that it obtained no advantage that it would not have obtained by dealing with Engborg individually, but that claim is unpersuasive. There is no indication that Engborg would have even entered into the contract on an individual basis.

Finally, plaintiff argues that Minnesota's adoption of the Model Business Corporation Act in 1981 eliminated the doctrine of de facto corporations. *Minn.Stat.* §§ 302A.153 and 302A.155 state that corporate existence begins when articles of incorporation are filed with the Secretary of State. Although this may eliminate the de facto doctrine in Minnesota, it does not necessarily affect the viability of an estoppel defense. The reporter's notes to § 302A.153 specifically state that "[t]he defense of estoppel has nothing to do with the efficacy of an attempted corporation, and may apply even where no documents have been filed with the Secretary of State." 20 *Minn.Stat.Anno.* 280 (1985). *See also Timberline Equipment Co. v. Davenport,* 267 Or. 64, 514 P.2d 1109, 1111, n. 1 (Or.1973). (In considering the effect of a provision comparable to *Minn. Stat.* § 302A.155 on the doctrines of incorporation de facto and by estoppel, the court found that estoppel is a distinct and independent theory from de facto incorporation.) For all these reasons, the court concludes that plaintiff is estopped from seeking damages personally from Engborg.

## ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. Plaintiff is entitled to its costs and judgment against defendant Aidan Marketing/Distribution, Inc. in its own name and d/b/a Aidan Distribution, Inc. in the amount of $44,857.90.

2. Plaintiff is not entitled to relief against defendant Millie Engborg, and the claims against her are dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.