TRUSTEES OF EAST NORWAY LAKE NORWEGIAN EVANGELICAL LU-THERAN CHURCH and others *vs.* BERNT FROISLIE and another.

November. 22, 1887.

Contract of Religious Society and Pastor — Use of Parsonage after Pastor's Death.—Where a religious society employs a pastor under an agreement by which he is to receive for his services as such a certain cash salary, and the use of a parsonage as a residence, the contract is one personal to himself, and is terminated by operation of law at his death, and his personal representative has no right to the possession of the parsonage after his decease. His occupancy, being connected with, and in consideration of, his services as pastor, does not create the conventional relation of landlord and tenant.

Corporation de Facto — Conveyance — Collateral Attack.—A corporation *de facto,* at least where there is a law under which a corporation may be formed for such purposes, is capable of taking and holding property as grantee, and conveyances to it will be valid as to all the world, except the state in direct proceedings to inquire into its right to exercise corporate franchises. In an action brought by it to recover such property, no private person will be allowed to attack collaterally the regularity of its organization.

Religious Corporation—Conveyance — Want of Notice of Meeting—Ratification.—The matter of notice of a meeting of a religious society to authorize its trustees to convey its real estate goes not to the power of the society to convey, but to the authority of the trustees as its agents. Hence, if the trustees make conveyance under the authority of a resolution passed at a meeting held without giving the notice required by statute, such conveyance is capable of ratification by the members of the society. When *all* the members of the religious society in whose behalf such conveyance has been made unite with two new religious societies, the organization of the old society being abandoned, and the two new societies bring an action to recover possession of the property, claiming title under such conveyance, *held,* to amount to such a ratification.

The plaintiffs in this action are "The Trustees of the East Norway Lake Norwegian Evangelical Lutheran Church of Kandiyohi County, Minnesota," and "The Trustees of the West Norway Lake Norwegian Evangelical Lutheran Church of Kandiyohi County, Minnesota," and they brought the action in the district court for Kandiyohi county, to recover the possession of certain real property detained by the defendant, and of which the plaintiffs allege that they are the joint owners. The answer denies plaintiffs' incorporation and ownership, admit defendants' possession, and justifies the same under a lease from the administrator of the estate of L. J. Markus, deceased, under the circumstances stated in the opinion. The action was tried before *Brown*, J., and a jury, and plaintiffs had a verdict. Judgment was entered thereon, from which the defendants appeal.

*Lomen & Torrison*, for appellants.

*Arctander & Arctander* and *James O. Pierce*, for respondents.

MITCHELL, J. On the trial of this case much irrelevant and immaterial evidence was introduced or offered, and almost all of the evidence offered by either party was objected to by the other. And when the case comes here on appeal, we are confronted with the formidable number of 42 assignments of error. But when this mass of rubbish is removed, the material facts are found to be comparatively simple, and the legal questions involved very few.

The action is ejectment. The common source of title under which both parties claim is a religious society, incorporated under Gen. St. c. 34, title 4, under the name of "The Trustees of the Norwegian Evangelical Lutheran Church of Norway Lake, Kandiyohi County, Minnesota," and called on the trial the "Old Society." This society acquired title of the premises in dispute by deed from Hanson and Heden, and used and occupied them as a parsonage or residence for their pastor. They employed as pastor one Markus, who received for his services as such a certain cash salary, and the use of this parsonage as a residence. He went into possession in October, 1870, and occupied it under this arrangement until the division of the society hereinafter referred to. In 1877 the members of the society having determined to divide, two new societies were organized, or attempted to be organized, under the statute. As appears from their

respective certificates of incorporation, the name adopted by one of them was "The Trustees of the East Norway Lake Norwegian Evangelical Lutheran Church of Kandiyohi County, Minnesota," and by the other, "The Trustees of the West Norway Lake Evangelical Lutheran Church of the Town of Norway Lake, Kandiyohi County, Minnesota." *All* of the members of the old society went into one or the other of these two, and thereafter the organization of the old society appears to have been abandoned, except for the purpose of closing up their business, and disposing of their property. Both of these new societies have ever since been in the exercise of all the usual powers and functions of religious corporations. They continued, however, to worship together in the old church until as late as June, 1878. At a meeting of the old society held June 28, 1878, it being desired to transfer their property to the two new organizations, but the description of a part of it in their deed from Hansen and Heden being considered not sufficiently definite, it was thought that the best way to correct this and accomplish the desired object was to reconvey to Hanson and Heden, and have them convey to the new societies. The society thereupon adopted a resolution authorizing their trustees to convey to Hanson and Heden, and requiring the latter then to convey to the two new societies. In pursuance of this the trustees of the old society conveyed to Hanson and Heden, and they in turn to plaintiffs. This is plaintiffs' title.

After the division of the old society, Markus continued to be the joint pastor of the two new societies, and as such was allowed to occupy the parsonage *"just as he had before."* He continued to occupy it until his death, in December, 1885. After his death his administrator, claiming the right of possession, gave defendants the lease under which they now claim. The contention of defendants is that Markus was a tenant from year to year, and that on his death his personal representative was entitled to the possession until the termination of the year ending October, 1886, and thereafter until the tenancy should be terminated by notice to quit. This is clearly untenable. The contract between Markus and the old society first, and the new societies afterwards, as their pastor, was one purely personal to himself, and his occupancy of the parsonage was connected with and

v.37m—29

in consideration of his services as such, which did not create the conventional relation of landlord and tenant. This contract, being personal to himself, necessarily terminated by operation of law at his death, and his personal representative had no more right to the possession of the premises than any mere intruder, and could give none to defendants, and notice to quit was not necessary.

It seems to be urged, however, that Markus had ceased to be the pastor of these societies before his death, and the fact of his being allowed to remain in possession thereafter somehow changed his occupancy into a tenancy from year to year. Some allusion was incidentally made in the pleadings and during the trial to his being deposed, but we find no proof of it; so far as the record discloses, he remained pastor till his death. But, even if it were otherwise, his occupancy would not, upon his ceasing to be pastor, *eo instante*, become a tenancy from year to year, or even a tenancy at will, creating the conventional relation of landlord and tenant. To have that effect, his occupancy afterwards must have been of such duration, or permitted under such circumstances, as to warrant an inference of consent on part of the societies to a different holding from that which he formerly had. There is not a particle of evidence of any such facts.

Defendants, however, attack plaintiffs' title. They claim that they were never legally organized, and hence were incapable of taking or holding property. The points made in support of this contention are that the meetings at which the organizations were attempted to be made were not held after sufficient notice; that the certificates of incorporation were not properly executed, acknowledged, or recorded, etc.; and that Sp. Laws 1878, c. 193, purporting to legalize the organizations, is unconstitutional. Under the view we take of the case it is wholly unnecessary to consider any of these questions. The plaintiffs are at least corporations *de facto*. Such a corporation, at least where there is a law under which a corporation might have been legally formed with such power, is capable of taking and holding property as grantee as well as a corporation *de jure*, and conveyances to it are valid as to all the world, except the state in proceedings in *quo warranto*, or other direct proceedings to inquire into its right to

exercise corporate franchises.   And in an action by it to recover such property, no private person will be allowed to inquire collaterally into the regularity of its organization.   This rule is not founded upon any principle of estoppel, as is sometimes assumed, but upon the broader principles of common justice and public policy.   It would be unjust and intolerable if, under such circumstances, every interloper and intruder were allowed thus to take advantage of every informality or irregularity of organization.

Another ground of attack on plaintiffs' title is that the meeting of the old society, which authorized its trustees to convey the premises, was not called upon due notice.   There are, in our opinion, two sufficient answers to this:   *First.*  The evidence does not show any such thing, and every reasonable presumption will be made in favor of the regularity of the meeting.   Notice will be presumed until the contrary appears.   *Second.*  Under the facts of this case it must be presumed, even if proper notice was not given, that the act of the trustees in making this conveyance has been ratified by the only persons interested, or who had a right to complain, viz., the members of the society itself.   It will be observed that this question of notice of the meeting goes, not to the power of the corporation to convey, but to the authority of the trustees as their agents to make the conveyance. The statutory provision regarding such notices does not concern the public at large, but is a mere regulation for the benefit of the members of the society themselves.   No principle of public policy is at stake.   If a conveyance is made by authority of a meeting held without proper notice, no wrong is done to any one except the stockholders, as we may term the members of the society; and, like any other act of an agent performed without authority, it is capable of ratification.   In this case neither the old society nor any member of it is raising any objection.   On the contrary, all the members of the old society, having joined the new societies, are here, through these societies, as plaintiffs, claiming title under this very conveyance.   This amounts to a ratification.

The objections made to the forms of the deeds are clearly not well taken.   In the deed from the old society to Hanson and Heden the society by its corporate name is named as grantor.   This makes it

the deed of the society, although, in executing it, the trustees signed merely their names, without adding the title of their office. The deed from Hanson and Heden runs to A., B., and C., "Trustees of the East Norway Lake Norwegian Evangelical Lutheran Church," and C., D., and C., "Trustees of the West Norway Lake Norwegian Evangelical Lutheran Church of Norway Lake," (which were the corporate names of the societies,) and to their successors in office, "in trust for said Evangelical Lutheran Church." We think this was a conveyance to the societies, and not to the trustees, *eo nomine*, in trust for them. But, even if it were the latter, the trust would, under the statute of uses and trusts, (Gen. St. 1878, *c.* 43,) be a "passive" or executed one, and the title would pass directly to the societies.

The by-laws of the societies, and the ecclesiastical constitution of the synod to which they belonged, were clearly immaterial, and were properly excluded by the court. They seem to have been offered for the purpose of showing that the majorities of these societies, and who controlled their legal organizations, had by certain violations of the ecclesiastical polity of the church forfeited their rights to the property of the societies. No such question could be raised or litigated in an action by the societies to recover their property from defendants.

This substantially covers all the assignments of error which we deem of sufficient importance to require any special consideration. We have examined all the others and find no error.

Judgment affirmed.