WILLIAM G. RICHARDS v. MINNESOTA SAVINGS BANK and Others.

January 6, 1899.

Nos. 11,350—(189).

### Savings Bank—Laws 1867, c. 23—Laws 1875, c. 84.

Laws 1867, c. 23,—an act to provide for the incorporation of savings associations,—was superseded by Laws 1875, c. 84, except as to savings banks and associations previously organized. As to them, it remains in force.

### Same—Abandonment of Business for 16 Years—No Dissolution of Corporation.

The Union Savings Bank of Rochester was a corporation duly organized under the act of 1867. In the year 1873 it sold all of its assets and the good will of its business, and paid its depositors. Thereafter it did no business for 16 years, but, in 1889, its board of trustees was reorganized by the co-operation of a majority of its then surviving trustees. The new board amended its articles of incorporation pursuant to the provisions of Laws 1889, c. 233, whereby the name of the corporation was changed to the Minnesota Savings Bank, and its place of business to St. Paul. Thereafter, and until February, 1897, the Minnesota Savings Bank did business at St. Paul as a bank, with the acquiescence of the state. *Held*, that such failure of the Union Savings Bank to exercise its corporate powers did not work a dissolution of the corporation, and that, if it be conceded that the act of 1889 is unconstitutional, still it gave the corporation color of law for the change of its name and place of business; therefore the Minnesota Savings Bank was and is at least a de facto corporation.

**Corporation de Facto—Partnership—Fraud.**

> A creditor who has dealt with a corporation de facto in its corporate name and capacity, and given credit to it, and not to its members or stockholders, cannot, in the absence of fraud, charge them, as partners, with the debts of the corporation.

**Finding of Court Sustained.**

> The finding of the trial court to the effect that the plaintiff and his assignors dealt with the Minnesota Savings Bank as a corporation is sustained by the evidence.

Action in the district court for Ramsey county to recover from defendant bank, and the individual shareholding defendants, the sum of $7,517.47 deposited by plaintiff and other persons with the Minnesota Savings Bank. The cause was tried before Kelly, J., without a jury, who ordered judgment in favor of plaintiff against the defendant bank, but in favor of the individual defendants for costs. From the judgment entered in pursuance of such order, plaintiff appealed. Affirmed.

*Alva R. Hunt,* for appellant.

The Union Savings Bank of Rochester was dissolved in 1873. The voluntary surrender by a corporation of its franchise is one of the recognized modes by which its existence may be terminated. 5 Thompson, Corp. §§ 6678, 6681; 1 Morawetz, Corp. § 413; Lauman v. Lebanon, 6 Casey, 42; Black v. Delaware, 22 N. J. Eq. 130; Merchants v. Wagner, 71 Ala. 581; Pringle v. Eltringham, 49 La. An. 301. The absolute common-law right of a private corporation to dissolve itself is not abridged by the statute permitting a direct action to be brought in certain cases by the state to dissolve it. See Treadwell v. Salisbury, 7 Gray, 393; Angell & Ames, Corp. § 127; 2 Kent, Com. 280; Bradt v. Benedict, 17 N. Y. 93. If a corporation suffer acts to be done which destroy the end and object for which it was instituted, it is equivalent to a surrender of its rights. Briggs v. Penniman, 8 Cow. 387; Slee v. Bloom, 19 Johns. 456; 2 Kyd, Corp. 467; Strickland v. Prichard, 37 Vt. 324; Bartholomew v. Bentley, 1 Oh. St. 37. The consent of the state may not prevent a forfeiture of the corporate franchise, when the corporation disposes of and abandons its business and operating franchise,

so that there is nothing left which it can lawfully do and no reason for keeping it longer alive. State v. St. Paul & S. C. R. Co., 35 Minn. 222; Combs v. Milwaukee, 89 Wis. 297. An abandonment or surrender by corporators of their franchise is a question both of fact and intent, and undoubtedly such an abandonment may be proved by acts as well as by words. 5 Thompson, Corp. §§ 6659, 6683.

The franchise of a corporation is merely a privilege, and, in the nature of things, cannot be transferred like tangible property. The transfer of a franchise in reality means a grant of a new franchise by the state to the transferee. An attempted transfer without the consent of the state is void. 1 Morawetz, Corp. §§ 422, 924, 928. See also State v. Sherman, 22 Oh. St. 411. The franchise of a corporation being an incorporeal hereditament, cannot be seized and sold under an execution. Gue v. Tide W. C. Co., 24 How. 257; Randolph v. Larned, 27 N. J. Eq. 557; Stewart v. Jones, 40 Mo. 141.

Laws 1889, c. 233, is void as being in violation of the constitution prohibiting special legislation. See City v. Gillett, 32 Kan. 431; Nichols v. Walter, 37 Minn. 264; State v. Sheriff, 48 Minn. 236; State v. Inhabitants, 47 N. J. L. 442; Green v. Knife Falls Boom Corp., 35 Minn. 155.

Any corporate right, privilege and franchise which may have been transferred from the original corporation of the Union Savings Bank, was abandoned, and the corporation dissolved the instant its name was changed. Cincinnati v. Bate, 96 Ky. 356; Lauman v. Lebanon, supra; 1 Thompson, Corp. § 288; Sykes v. People, 132 Ill. 32.

The plaintiff sues the defendants not as a corporation, but as individuals, and there is no occasion for the application of the rule of estoppel. It is everywhere held that, where persons undertake to do business for financial gain or profit as a corporation and do not become legally incorporated, they are individually liable for the debts of the assumed corporate body. Johnson v. Corser, 34 Minn. 355; Hess v. Werts, 4 S. & R. 356; Bigelow v. Gregory, 73 Ill. 197; Kaiser v. Lawrence, 56 Iowa, 104; Abbott v. Omaha, 4 Neb. 416; Jessup v. Carnegie, 44 N. Y. Super. Ct. 260; Wells v. Gates, 18 Barb. 554; Martin v. Fewell, 79 Mo. 401; Frost v. Walker, 60 Me.

468; Coleman v. Coleman, 78 Ind. 344; Eaton v. Walker, 76 Mich. 579.; Sheren v. Mendenhall, 23 Minn. 92; Roberts Mnfg. Co. v. Schlick, 62 Minn. 332. The corporate existence of a company which is neither a de facto nor a de jure corporation may be questioned in a private action to which it is a party. Martin v. Deetz, 102 Cal. 55. See also Owen v. Shepard, 59 Fed. 746; 6 Thompson, Corp. §§ 7642, 4355; Finnegan v. Noerenberg, 52 Minn. 239.

*Dickson & Donnelly*, for respondent savings bank.

The test by which to determine whether a corporation is dissolved for all purposes is whether it has lost its capacity to sustain itself by a new election of officers. If the corporation has the power in itself to supply the deficiency in its body, its rights are not extinguished, but only dormant. 5 Thompson, Corp. § 6578.

The validity of a corporation cannot be questioned collaterally, but only in a direct proceeding by the state. 6 Thompson, Corp. § 7642. This is true also with de facto corporations. Id. §§ 7642, 7643; Finnegan v. Noerenberg, 52 Minn. 239; Taylor, Priv. Corp. 105; 1 Cook, Stockh. § 637.

A corporation is not to be deemed dissolved by reason of any nonuser or misuser of its franchises, until default has been judicially ascertained and declared. Minn. Central Ry. Co. v. Melvin, 21 Minn. 339; 1 Cook, Stockh. § 637; 6 Thompson, Corp. § 7722. A person dealing with a de facto corporation as such, and becoming its creditor, will not be allowed to set up the invalidity of its organization for the purpose of going beyond the artificial body and charging its stockholders as partners, in the absence of fraud. 6 Thompson, Corp. § 7648. See also Johnson v. Corser, 34 Minn. 355; Merchants v. Stone, 38 Mich. 779; Stout v. Zulick, 48 N. J. L. 599; Rutherford v. Hill, 22 Ore. 218; People v. Montecito, 97 Cal. 276.

*Flandrau, Squires & Cutcheon*, for respondent Sarah W. Coleman.

A de facto corporation exists where there is a law authorizing the creation of corporations, and an attempt to organize a corporation pursuant to it, and a user as a corporation under such attempted organization. Finnegan v. Noerenberg, 52 Minn. 239. A person contracting with a corporation is estopped to deny its legal

existence or its power to make the contract, unless the fact of the incorporation or power was stipulated for, or the making of the contract was prohibited by law, or the person was fraudulently induced to recognize the corporation or power. 7 Am. & Eng. Enc. 29; Frick v. Trustees, 99 Ill. 167; Close v. Glenwood Cemetery, 107 U. S. 466; Hasselman v. U. S., 97 Ind. 365; Marion v. Dunkin, 54 Ala. 471; Stoutimore v. Clark, 70 Mo. 471; Estey v. Runnels, 55 Mich. 130; Massey v. Citizens, 22 Kan. 624. See also French v. Donohue, 29 Minn. 111; Scheufler v. Grand Lodge A. O. U. W., 45 Minn. 256; Minn. Gaslight E. Co. v. Denslow, 46 Minn. 171; Hause v. Mannheimer, 67 Minn. 194; Caldwell v. Auger, 4 Minn. 156 (217); Chaska Co. v. Board of Suprs., 6 Minn. 130 (204); County Commrs. v. Robinson, 16 Minn. 340 (381). A corporation's right to exist cannot be attacked collaterally. 6 Thompson, Corp. § 7642; Finnegan v. Noerenberg, supra.

*J. P. Kyle,* for respondent John Marty.

START, C. J.

This action was brought to impose a partnership liability on the alleged associates or stockholders interested in the Minnesota Savings Bank, one of the defendants herein, for deposits made in the bank by plaintiff and his assignors, on the ground that the bank was not a corporation. A trial of the action resulted in a judgment in favor of the plaintiff against the bank for the amount claimed, and in favor of the individual defendants against the plaintiff, that he take nothing by this action, and for costs against him. The plaintiff appealed from the judgment against him.

The facts found by the trial court, briefly stated, are these:

On March 31, 1873, the Union Savings Bank of Rochester was a de jure corporation, and a going savings bank, which was duly organized in 1868, under Laws 1867, c. 23, with J. V. Daniels, M. J. Daniels, Asahel Smith, J. B. Clark and Frederick T. Olds as incorporators and sole trustees thereof. J. V. and M. J. Daniels on or prior to the day named had acquired from the other trustees, and persons interested therein, all of the assets of the Union Savings Bank, and claimed to be the owners thereof, and of the charter, franchise and privileges of the bank. Immediately thereafter they

transferred all of the assets and good will of the Union Savings Bank, not including its charter, franchise and privilege to be a savings bank, to the Union National Bank of Rochester. Thereafter, and prior to 1889, the Union Savings Bank did not do any business whatever as a bank, except such as was necessary to close up its accounts with its customers. No meetings were held by, the trustees during this time, and no attempt was made to transact any other business. In the year 1889, and some time prior to the month of June, M. J. Daniels, claiming to be the sole surviving trustee of the Union Savings Bank having any beneficial interest therein, in consideration of $1,000 paid to him in good faith, sold and transferred to William Bickel and others, associated or to become associated with him, the charter, franchise and privilege to be a corporation of the Union Savings Bank, with the knowledge that Bickel and his associates intended under such charter to open and conduct a bank in the city of St. Paul. Prior to this time two of the trustees (J. V. Daniels and J. B. Clark) died, and one other (F. T. Olds) had moved from the state. After such transfer of the charter, and to make it effective, William Bickel, William F. Bickel and Frederick C. Stevens, with the co-operation and assent of M. J. Daniels and Smith, two of the then three surviving trustees, reorganized the board of trustees of the Union Savings Bank, and in good faith filled all vacancies in such board, which thereafter and at all times in good faith acted as and for the Union Savings Bank. On June 4, 1889, the board of trustees amended the articles of incorporation, and changed the name of the Union Savings Bank of Rochester to the Ramsey County Savings Bank, and its place of business to St. Paul; and thereafter, and on August 6, 1889, the board, by an amendment of the articles of incorporation, changed the name of the corporation to the Minnesota Savings Bank, and further provided that the capital stock thereof should be $400,000, divided into 8,000 shares of $50 each. Thereafter, and until the month of February, 1897, the Minnesota Savings Bank continuously did business at the city of St. Paul as a bank, and claimed the legal right to so operate and do business under the charter of the Union Savings Bank, and was in fact a bank; and during all this time the state of Minnesota, by its bank examiner,

received from it the reports required by law of the banks of the state, and treated it as a lawfully existing and going bank of the state. In 1889, and about the time the Minnesota Savings Bank began business in St. Paul, an application was made by interested parties to the attorney general of the state to institute proceedings in the name of the state to test the legality of the claim of the Minnesota Savings Bank to do business under the charter of the Union Savings Bank, which application, after a hearing and investigation, was denied. The plaintiff and his assignors dealt with the Minnesota Savings Bank, in depositing the money with it, for the recovery of which this action was brought, as a corporation doing a banking business. Each of the individual defendants at the time such deposits were made was financially interested in the bank, and each then held a certificate for one or more shares of its supposed capital stock.

A brief reference to the statutes relating to savings banks, in connection with this statement of facts, is essential to a clear understanding of the propositions here urged by the plaintiff. Laws 1867, c. 23, entitled "An act to provide for the incorporation of savings associations," provided that any number of persons not less than five might be incorporated as a savings association, by complying with its terms. Upon doing so, they and their successors became a corporation and body politic, with perpetual succession. The corporators and their successors were the board of trustees to whom the management of the business of the corporation was exclusively committed, with power to fill all vacancies in the board of trustees by a majority vote of the surviving trustees.

By Laws 1875, c. 84, Laws 1867, c. 23, was amended "so as to read as follows." The latter act was re-enacted and amended by the former. There were at this time some six savings banks in the state, which were organized under the act of 1867, of which the Union Savings Bank of Rochester was one. Section 18 of the act of 1875 provided that,

"Any savings association which has been heretofore incorporated and is now doing business as a savings association or bank, may

avail itself of the privileges of this act and shall be subject to all of the liabilities prescribed therein."

Shortly thereafter, and on June 18, 1875, it was held by the attorney general of the state that savings banks organized under the act of 1867 might continue to do business without complying with the act of 1875. Op. Attys. Gen. (1858–1884) 323. Afterwards, and on February 11, 1880, it was held by the same officer, in an opinion for the guidance of the public examiner, that the act of 1875 superseded the act of 1867 as to all savings banks incorporated subsequently to the act of 1875, but as to those previously organized the act of 1867 remained in force, unless they elected to reorganize under the act of 1875. Id. 414.

Laws 1879, c. 109, codified the law as to savings banks, but it expressly provided that no part of the act should apply to savings banks then in existence and operation. Section 1 of this act declared savings banks or institutions for savings then existing, or which might be thereafter organized, to be corporations, and section 48 thereof provided for the change of the name of a corporation with the approval of the public examiner. The evidence in this case shows that no application was made to that officer for permission to change the name of the Union Savings Bank under this act.

Laws 1889, c. 233, purports to amend Laws 1867, c. 23, § 11, so as to authorize the board of trustees of any savings bank organized under the act of 1867 to change its name and place of business by an amendment of its articles of incorporation.

The claim of the plaintiff, stated concisely, is that the Minnesota Savings Bank was never a corporation, de jure or de facto; hence the defendant stockholders are individually liable to the depositors in the bank and its other creditors as partners.

It is urged in support of the proposition that the Union Savings Bank was dissolved in 1873 by reason of an abandonment at that time of its corporate rights and franchise, and that it never after existed as a corporation. It is to be noted in this connection that this corporation was not one for conducting a purely private enterprise for the benefit of its members, its trustees. Its corporate

franchise was granted to it to conserve important public interests, by affording persons of small means an opportunity for the safe investment of their savings, and thereby foster habits of industry and thrift. The duty and the trust of receiving all deposits, and safely investing them for the benefit of the depositors, were imposed upon the trustees of this corporation in consideration of its corporate franchise. The corporation was not required to have any capital stock or property whatever before commencing business, for its duty and business was to receive and invest the money of others. See Laws 1867, c. 23.

Hence the Union Savings Bank did not, by paying its depositors, and transferring its assets and business to the Union National Bank, destroy the end and object for which it was organized, and thereby incapacitate itself from discharging in the future its corporate powers and duties. It could thereafter resume the business of receiving deposits and investing them, precisely as it began in the first instance to do. The nonuser of the corporate franchise for 16 years did not work a dissolution of the corporation.

Its continued neglect to discharge its duty to the public by the exercise of its corporate franchise was a good reason why the state should have resumed the grant and dissolved the corporation, but, in the absence of any action on the part of the state, a surrender or abandonment of its corporate franchise, and an acceptance thereof by the state, cannot be presumed from its transfer of its property and continued nonuser of its franchise. It remained an inactive corporation, and had the right to resume the exercise of its franchise in 1889, unless the state interfered. The Union Savings Bank was therefore a de jure corporation in 1889, when its board of trustees was reorganized.

In reaching this conclusion, we have not overlooked the cases cited and relied on by the plaintiff, which hold, in effect, that a corporation for pecuniary profit becomes extinct for all purposes whenever there has been an abandonment of its franchise, committed under such circumstances, or continued for such length of time, as to render it legally impossible for it to renew them. Such, as already stated, was not the case with the Union Savings Bank. It did not abandon its franchise, but simply ceased to exercise it

for a time. It did not do any act which incapacitated it, or rendered it legally impossible, to resume business.

It is further urged by plaintiff that the alleged sale and transfer of the corporate franchise in 1889 to Bickel and associates was void. It is true that nothing passed by the transfer. Dickson v. Kittson, supra, page 168.

But this did not affect the existence of the corporation. A void act could not dissolve it. Its board of trustees was reorganized, and the vacancy therein filled, by the co-operation and consent of a majority of the surviving trustees. It then became an active corporation, and might have resumed business at Rochester. It, however, changed its name and place of business by an amendment of its articles of incorporation. The plaintiff claims that this change of name was not authorized by law; hence the franchise was abandoned and the corporation dissolved the instant its name was changed. If the attempted change in the name of the corporation and its place of business was void, because unauthorized, it could not affect the existence of the corporation; but it would affect its strictly legal right to exercise its corporate privileges, by the name of the Minnesota Savings Bank, at St. Paul.

The reasons urged why the amendment of the articles of incorporation was unauthorized are that Laws 1889, c. 233, by virtue of which the amendment was made, is void, because Laws 1867, c. 23, § 11, which it attempted to amend, had then been displaced by Laws 1875, c. 84. The act of 1867 remained in force as a general law after the act of 1875 as to all savings banks theretofore organized.

Whether the act of 1889 is unconstitutional because it, in effect, grants special privileges to a particular class of savings banks, as claimed by plaintiff, and is, in effect, special legislation, is a more serious question. It is certainly restricted in its application to that class of savings banks which was in existence prior to the act of 1875, and the class cannot now be enlarged. However, it is not necessary to decide the question here; for, if the act be unconstitutional, it gave the Union Savings Bank color of law for its acts in changing its name and place of business, and it thereafter, in good faith, with the implied, if not the direct, consent of the

state, exercised its corporate powers as the Minnesota Savings Bank. It was, therefore, a de facto, if not a de jure, corporation. Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150; Coxe v. State, 144 N. Y. 396, 39 N. E. 400.

The trial court found as a fact that the plaintiff and his assignors dealt with the Minnesota Savings Bank as a corporation doing a banking business at the time they severally deposited their money in the bank. The plaintiff claims that this finding is not sustained by the evidence. Neither the plaintiff nor any of his assignors were witnesses on the trial; hence they made no claim that they dealt with the defendant stockholders, or knew of their existence, nor did they deny that they knew that the Minnesota Savings Bank was doing business as a corporation, and dealt with it as such. These were matters peculiarly within their own knowledge, and only slight evidence was necessary to justify the finding. The very name of the association (Minnesota Savings Bank) advised persons dealing with it that it claimed to be an incorporated savings bank; for the statute forbids any bank or banker, except such savings banks, to advertise or put forth a sign as a savings bank, or to solicit or receive deposits as such. Laws 1879, c. 109, § 46. The evidence in connection with the plaintiff's allegations in his verified complaint sustains the finding.

The case at bar, then, in its last analysis, is simply this: The Minnesota Savings Bank, a de facto corporation, in good faith assumes and exercises all of the functions and powers of a de jure corporation, with the acquiescence of the state; and the plaintiff contracts with it as such, on the faith of its corporate responsibility, and not otherwise. The contract is legally enforceable by him against the bank. But the bank becomes insolvent, and then the plaintiff seeks to repudiate his contract with it, and to charge innocent stockholders, who did not have, and were not permitted by law to have, any control of the affairs of the bank, as partners, with the entire liabilities of the bank. Whatever may be the rule in other jurisdictions, happily the laws of this state sanction no such injustice.

It is the settled law of this state that a creditor who has dealt with a corporation de facto in its corporate name and capacity,

and given credit to it, and not to its members or stockholders, cannot, in the absence of fraud, charge them, as partners, with the debts of the corporation. Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150; Johnson v. Okerstrom, 70 Minn. 303, 73 N. W. 147. This case falls within the rule.

Judgment affirmed.

CANTY, J.

I concur in all of the foregoing opinion, except that part which holds that the charter of the Union Savings Bank was not abandoned, and the franchise lost, by the 16-years nonuser. But it is not necessary to decide in this case whether the charter was lost or not. Conceding that the franchise of the bank was lost by said nonuser, I am of the opinion that the Minnesota Savings Bank should still be treated in this case as a corporation de facto.