A. W. BOWMAN v. CITY OF MOORHEAD.[1]

February 18, 1949.

No. 34,873.

*Garrity & Garrity,* for appellant.

[1]Reported in 36 N. W. (2d) 7.

*Henry C. Stiening, Briggs, Gilbert, Morton, Kyle & Macartney, Harold W. Moody,* and *Frank J. Hammond,* for respondent.

*Orville C. Peterson,* for League of Minnesota Municipalities; *Elmer R. Peterson,* City Attorney, Albert Lea; *Peter Moscatelli,* City Attorney, Ely; *John W. Flynn,* City Attorney, Fairmont; *Herman Senneka,* City Attorney, Glenwood; *Leo G. Winzenburg,* City Attorney, Jackson; *Charles A. Fortier,* City Attorney, Little Falls; *John Haave,* City Attorney, Montevideo; *O. K. Alger,* City Attorney, Morris; *E. V. Cliff,* City Attorney, Ortonville; *Lloyd Stein,* City Attorney, St. Cloud; *Philip M. Stone,* City Attorney, Tower; *W. R. Mitchell,* City Attorney, Tracy; and *Clarence O. Holten,* City Attorney, Wayzata, filed a brief as *amici curiae* on behalf of the contention of respondent.

LORING, CHIEF JUSTICE.

This is an appeal from a judgment for defendant on the pleadings declaring that the revised charter of the city of Moorhead, approved at the election of January 7, 1947, is valid and in full force and effect. The complaint sought to have that charter declared void and of no effect and to enjoin and restrain defendant from issuing certain bonds in excess of the debt limit prescribed by the original charter of defendant.

Defendant adopted a home rule charter in 1900 under Minn. Const. art. 4, § 36. In December 1946, a board of freeholders presented a proposed revision of the original charter. This revision was designated "a proposed new Home Rule Charter." It was published once in its entirety in a legal newspaper of general circulation, but not once each week for four successive weeks as required for amendments by Minn. Const. art. 4, § 36.[2] Further irregularities appeared in the manner in which the revision was submitted to the voters at a special election. The ballot did not indicate the general nature of each amendment to the charter, but merely asked: "Shall the proposed new Charter be adopted?" Sixteen months

---

[2]Leighton v. Abell, 225 Minn. 565, 31 N. W. (2d) 646.

after the adoption of the proposed amendments,[3] three ordinances were proposed by the city council authorizing the issuance of general obligation bonds and sewage disposal plant revenue bonds. These ordinances were adopted at a "special election" in April 1948, after due notice thereof.

Under the original charter, § 98, subd. 3, the debt of the city was limited to a maximum of five percent of the total value of taxable property in the city according to the last preceding assessment for the purpose of taxation. Under the revised charter (§ 88), the debt limit is permitted to be raised in an amount sufficient to authorize bonds, as provided in the ordinances for water and light plants and for a permanent improvement revolving fund.

The controversy on this appeal turns on whether the failure to comply with the provisions of Minn. Const. art. 4, § 36, in the adoption of the amended or new charter invalidates it when challenged in this action by plaintiff, a taxpayer. Judgment was entered in the court below denying plaintiff injunctive relief and declaring the charter approved at the election of January 7, 1947, to be valid and in full force and effect.

Plaintiff assigns as error the trial court's refusal to grant his motion for judgment on the pleadings, in granting defendant's motion for judgment, and in declaring that defendant's revised charter is valid and in full effect.

The method of publication used in giving notice of the charter amendments was defective,[4] and under Leighton v. Abell, 225 Minn. 565, 31 N. W. (2d) 646, the holding of the election thereunder could have been enjoined for failure to publish, as required, in the case of amendments.

---

[3] By a vote of 578 for to 72 against.

[4] Minn. Const. art. 4, § 36, reads: "* * * Such charter * * * may be amended by proposal therefor made by a board * * *, published for at least once each week for four successive weeks in a legal newspaper of general circulation in such city or village, * * *."

■ For defendant, the doctrine of *de facto* corporations is invoked to sustain the validity of the amended charter and acts done pursuant thereto.

A public or municipal corporation *de facto* exists when there is:

(1) Some law under which a corporation with powers assumed might lawfully have been created;

(2) A colorable and bona fide attempt to perfect an organization under such a law;

(3) User of the rights claimed to have been conferred by the law. This rule has been adopted in substance as applicable to private corporations.[5] The same rule applies whether the corporation is a public or private one.[6]

The reason for this rule, as accepted in this state, emphasizes the importance of stability and certainty in matters involving public corporate franchises and the serious consequences which might follow if the existence of a municipal corporation should be called into question and, perhaps, determined void in actions between the corporation and private parties. See, State v. Honerud, 66 Minn. 32, 34, 68 N. W. 323; Evens v. Anderson, 132 Minn. 59, 62, 155 N. W. 1040, 1041. In the Evens case, the court, after stating the rules, said (132 Minn. 62, 155 N. W. 1041):

"The fact that the organization was so defective as to be void in its inception does not change the rule. There is no room or place here for distinction between things that are voidable and things that are void. Neither the nature nor the extent of the illegality in organization can affect the application of these principles so long as the requirements above stated are met." (Citing cases.)

In the case of St. Paul Gaslight Co. v. Village of Sandstone, 73 Minn. 225, 75 N. W. 1050, action was brought to recover interest on

---

[5]Finnegan v. Noerenberg, 52 Minn. 239, 53 N. W. 1150, 18 L. R. A. 778, 38 A. S. R. 552; Johnson v. Okerstrom, 70 Minn. 303, 73 N. W. 147; Healey v. Steele Center Creamery Assn. 115 Minn. 451, 133 N. W. 69.

[6]Cf. St. Paul Gaslight Co. v. Village of Sandstone, 73 Minn. 225, 232, 75 N. W. 1050, 1051; Evens v. Anderson, 132 Minn. 59, 61, 155 N. W. 1040, 1041.

coupons cut from bonds of the village of Sandstone. The bonds were bearer paper, issued under statutory authority to purchase waterworks, if the proposition to do so had been submitted to and adopted by the electors of the village. Defendant village objected that the bonds were not advertised for sale, as required by statute then in effect, but had been delivered to the water company in payment for the transfer of waterworks to the village. The village claimed that the bonds were void for the reason that it had no power to issue them, because there was not and never had been any village of Sandstone. It further contended that the statute under which the village attempted to organize as a municipal corporation was unconstitutional as an invalid delegation of legislative functions to private citizens, and, further, that the territory incorporated into the village was not adjacent to platted lands therein within the meaning of the statute. As against these objections, the court affirmed the validity of the statute and said (73 Minn. 232, 75 N. W. 1051):

"We have, then, a valid law under which the village might have been incorporated as a de jure municipal corporation, an attempt so to incorporate, and the continuous exercise of all of the powers of such a corporation for more than four years before issuing its bonds. The state has never questioned its existence as a de jure municipal corporation, but has recognized it as such. Such being the facts, the case is within the rule that, where a municipal corporation is acting under color of law and exercising all the functions and powers of a corporation de jure, and the legality of its incorporation is not questioned by the state, but it has been recognized as such by the state for some years, neither the corporation nor any private party can question the validity of its corporate existence in a collateral action or proceeding." (Citing cases.)

Plaintiff in the case now before this court seeks to distinguish between defects caused by failure to fulfill requirements of incorporation contained in Minn. Const. art. 4, § 36, and mere failure to comply with the statutory prerequisite as the "color of law" under

which the revision took place. This distinction is not borne out by the cases. In the Evens case, the first requirement of a *de facto* municipal corporation is broadly stated that there be "some law" under which a corporation, with the powers assumed, may lawfully be created. Cf. also Tulare Irrigation Dist. v. Shepard, 185 U. S. 1, 22 S. Ct. 531, 46 L. ed. 773. In the St. Paul Gaslight Co. case, the court impliedly ruled on this question, since there it was contended that the statute under which the delegation of legislative functions took place was unconstitutional. The court pointed out that where a valid law existed under which the village might have been incorporated as a *de jure* municipal corporation the defect was not open to attack by private parties. Minn. Const. art. 4, § 36, prescribes that the charter be adopted by the procedure there set out; that "* * * it shall, * * * become the charter of such city or village as a city, and supersede any existing charter and amendments thereof; * * * and all courts shall take judicial notice thereof." See, Tooke, *De Facto Municipal Corporations under Unconstitutional Statutes* (1928) 37 Yale L. J. 935, 952.

Obviously, there has been a bona fide attempt here by defendant to perfect an organization by attempting to revise its charter under Minn. Const. art. 4, § 36, colorable as to method under the statutes later held unconstitutional in Leighton v. Abell, 225 Minn. 565, 31 N. W. (2d) 646, *supra.* Plaintiff does not challenge the *bona fides* of the attempt to organize or the user thereafter, except as to the ordinances and election authorizing added general obligation and sewage disposal plant bonds. While the user has not prevailed for long, an extended period of time is not essential. Cf. Evens v. Anderson, 132 Minn. 59, 61, 155 N. W. 1040, 1041. Defendant had functioned as a municipal corporation under the revised charter for over a year before this action was brought. There had been no challenge from the state by a proceeding in the nature of *quo warranto;* in fact, the state dealt with the city government of Moorhead as it

would have with any *de jure* municipality.[7] As said in the court's memorandum, after the certification of adoption of the revision:

"* * * An election was held in due course. A mayor and councilmen were elected. The city has continued in the exercise of all corporate functions, exercising those additional powers provided for in the 'revision' submitted by the charter commission, as aforesaid, * * *."

Under these circumstances, the government of Moorhead, under the revised charter, was a valid *de facto* government.

■ Counsel for plaintiff also contends that the doctrine of *de facto* municipal corporations is applicable only where the whole legal existence of the municipal organization is challenged and not where there is an abortive attempt to revise or reincorporate an existing *de jure* government. The case of State ex rel. Peterson v. City of Fraser, 191 Minn. 427, 254 N. W. 776, clarifies this problem. In that case, the then attorney general, the Honorable Henry N. Benson, for whom the Honorable Harry H. Peterson was later substituted, brought action in the nature of *quo warranto*, directed to the city of Fraser and individuals claiming to be its officers, to test the validity of the reorganization of the municipality from the status of a village to that of a city of the fourth class. It was contended that the charter commission was defective under Minn. Const. art. 4, § 36, and supplementary statutory requirements for freeholders. The court below discharged the writ. In affirming, this court held that, while membership on the commission appointed to submit the

[7] At least four opinions of the attorney general have been rendered to the city of Moorhead since the amended charter was accepted in January 1947: Nos. 218g-10 and 218g-13, August 27, 1947; No. 785e-2, October 14, 1947; No. 59a-40, December 16, 1947; Nos. 60 and 373b-3, January 15, 1948. One opinion, No. 785e-2, deals with a continuing function under the government organized under the amended charter. See, also, Opinions Attorney General, No. 58-0, dated April 23, 1948, stating that city officials could continue to operate as *de facto* officers although the amended charter had been defectively established under M. S. A. 410.23, 410.24, and 410.25. See, Attorney General v. City of Methuen, 236 Mass. 564, 578, *et seq.*, 129 N. E. 662, 667, *et seq.*

charter may have been defective under art. 4, § 36, nevertheless the members had acted as *de facto* officers. The charter which was the result of their actions was not vulnerable to attack even by *quo warranto,* although they themselves may have been subject to ouster by *quo warranto.* This court saw no obstacle to the application of the *de facto* doctrine because it was applied to a change in the form of an existing *de jure* government.

As pointed out by counsel for *amici curiae,* other jurisdictions also have applied the *de facto* doctrine to amended or revised municipal charters or similar authority.[8]

In our cases involving private corporations, no distinction has been observed as to whether the challenged defect under the statutes took place in the initial creation of the corporation or in a subsequent amendment.[9] In the leading case of East Norway Lake Church v. Froislie, 37 Minn. 447, 35 N. W. 260, a dispute over use of church property turned on whether a religious society, originally organized under G. S. 1866, c. 34, title 4, had been properly reorganized into two new societies. Each society claimed the parsonage. Defendants questioned the legality of the organization of plaintiff societies and hence their capacity to hold property. Plaintiffs had a verdict and judgment below. On appeal, it was contended that the old corporation was not dissolved, and consequently that the new corporations could not succeed to the rights of the old without proper conveyances.[10] This contention was rejected. Mr. Justice Mitchell, speaking for the court, said (37 Minn. 450, 35 N. W. 262):

"* * * The plaintiffs are at least corporations *de facto.* Such a corporation, at least where there is a law under which a corporation might have been legally formed with such power, is capable of

[8]City of Albuquerque v. Water Supply Co. 24 N. M. 368, 174 P. 217, 5 A. L. R. 519; Clapp v. Otoe County (8 Cir.) (1900) 104 F. 473; Cook v. Town of Putnam (Tex. Civ. App.) 283 S. W. 649. Cf. Taylor v. Cole, 201 Cal. 327, 257 P. 40; Douthit v. Baldwin, 114 Okl. 127, 244 P. 747; City of Topeka v. Dwyer, 70 Kan. 244, 78 P. 417, 3 Ann. Cas. 239.

[9]Richards v. Minnesota Sav. Bank, 75 Minn. 196, 77 N. W. 822; East Norway Lake Church v. Froislie, 37 Minn. 447, 35 N. W. 260.

[10]Appellant's brief, p. 14, in the cited case.

taking and holding property as grantee as well as a corporation *de jure*, and conveyances to it are valid as to all the world, except the state in proceedings in *quo warranto*, or other direct proceedings to inquire into its right to exercise corporate franchises. And in an action by it to recover such property, no private person will be allowed to inquire collaterally into the regularity of its organization. This rule is not founded upon any principle of estoppel, as is sometimes assumed, but upon the broader principles of common justice and public policy. It would be unjust and intolerable if, under such circumstances, every interloper and intruder were allowed thus to take advantage of every informality or irregularity of organization."

Richards v. Minnesota Sav. Bank, 75 Minn. 196, 77 N. W. 822, was a case where a bank had been properly organized in 1868 as a banking corporation under L. 1867, c. 23. In 1873 it transferred all of its assets and good will. It had had no business for 16 years. Thereafter, in 1889, it was reorganized with the help of a majority of the surviving trustees. The new board amended the articles of incorporation under the provisions of L. 1889, c. 233, changing the name and place of business and increasing the capital stock. In this court it was contended that the corporation was dissolved and its franchise abandoned by nonuser so that defendant shareholders were liable as partners. The court held that the reorganized corporation was a *de facto* corporation. An unconstitutional law, it said, could give color of law to acts in changing the name and place of a business where the reorganization was in good faith and the corporation exercised its powers with the implied consent of the state.

We conclude that the city government of Moorhead was empowered to do all acts authorized by the amended charter, adopted in 1947, as effectively as a *de jure* corporation with a like charter.

The ordinances and elections approving the contested bond issues were valid.[11]

Judgment affirmed.

[11]Cf. St. Paul Gaslight Co. v. Village of Sandstone, 73 Minn. 225, 75 N. W. 1050; Tulare Irrigation Dist. v. Shepard, 185 U. S. 1, 22 S. Ct. 531, 46 L. ed. 773; see, 1 Dillon, Municipal Corporations (5 ed.) § 67, and 2 *Id.* § 887; 6 McQuillin, Municipal Corporations (2 ed.) §§ 2514, 2694.