TOWN OF MAYSVILLE, OKLAHOMA, a municipal corporation, Appellant,

v.

MAGNOLIA PETROLEUM COMPANY, a Texas corporation, Pan American Petroleum Corporation, a Delaware corporation, Blackwell Zinc Company, Inc., a New York corporation, Climax Molybdenum Company, a Delaware corporation, Maracaibo Oil Exploration Corporation, a Delaware corporation, Ardie Oil & Gas Company, an Oklahoma corporation, Continental Land & Fur Company, a Delaware corporation, Atchison, Topeka and Santa Fe Railway Company, a Kansas corporation, W. A. Balentine, J. M. McDaniel, H. E. Ledbetter, Hugh Ledbetter, G. A. Brown, E. M. Young, L. A. Nordan, J. M. Flaitz, R. B. Mitchell, Lona Gardner, Eugene Leach, Ruby Leach, Lula Henderson, Chris Sterr, C. Radden, Overa Radden, Etta Mae Ivey, Paul Christ, T. M. Ridgeway, D. C. Ridgeway, Roy Barrett, Jewel R. Burrow, J. C. Thompson, William Rayburn Amos, T. G. Mays, Raymond Dills and Earl Sparks, Appellees.

No. 6100.

United States Court of Appeals
Tenth Circuit.

Nov. 6, 1959.

Barth P. Walker, Oklahoma City, Okl. (Loyd Benefield and Howard C. Johnson, Oklahoma City, Okl., on the brief), for appellant.

Fisher Ames, Oklahoma City, Okl. (Robert W. Richards, Norton Standeven, Roy C. Lytle, D. C. Johnston, Oklahoma City, Okl., Jack H. Smith, Ardmore, Okl., on the brief), for appellees.

Before MURRAH, Chief Judge, and HUXMAN and PICKETT, Circuit Judges.

MURRAH, Chief Judge.

Like Chickasha Cotton Oil Co. v. Town of Maysville, 10 Cir., 249 F.2d 542, this quiet title action by the Town of Maysville involves the title to a segment of railroad right-of-way under Section 14 of the Act of April 26, 1906, 34 Stat. 137, 142, which provides in substance and effect that a railroad, having acquired its right-of-way over Indian tribal land pursuant to Section 13 of the Act of February 28, 1902, 32 Stat. 43, 47, should have the right to purchase fee title thereto, at a valuation to be determined by the Secretary of the Interior. And, in the event the railroad should not make the purchase payment within the time prescribed by the regulations (i. e. June 30, 1909), "or should cease to use the right-of-way, title thereto should vest in the owner of the legal subdivision, of which the right-of-way was a part" except lands

"within a municipality, the title to which upon abandonment shall vest in such municipality." And see also St. Louis-San Francisco Railway Co. v. Town of Frances, 10 Cir., 249 F.2d 546.

The railroad abandoned its right to acquire fee title to the right-of-way in accordance with applicable regulations and claims no interest therein except as an easement for railroad purposes. It follows, therefore, that by operation of Section 14, supra, fee title to the right-of-way vested in the abutting property owners on June 30, 1909, unless on that critical date it was "within a municipality", and if so, fee title thereupon vested in the municipality. When the right-of-way became valuable for oil and gas, the Town of Maysville brought this suit, alleging that it became a duly incorporated town on or about February 17, 1906, and that the petition for and order of incorporation included, among other lands, the right-of-way involved here; and that the railroad, not having acquired the fee title to the right-of-way in pursuance of Section 14, supra, the lands vested in the Town of Maysville as within a municipality, subject only to the right of the railroad to use the surface for railroad purposes. It was alleged that the named defendants claimed some interest in the oil and gas and other minerals which might be produced from the property, and that the said claims constituted a cloud on the plaintiff's title. The defendants answered severally, setting out their respective interest in and to the lands and the minerals thereunder, and at least one defendant specifically alleged that the purported incorporation of the Town of Maysville was void because there was no hearing on the petition to incorporate on the date fixed therefor, and the order of incorporation was not signed by the judge of the court having jurisdiction of the proceedings as required by law; and that judicial recognition of the purported proceedings to incorporate would constitute the taking of property of the defendants and their predecessors without due process of law.

And, moreover, it is alleged that at the time of the filing of the petition for incorporation, the tract of land traversed by the railroad right-of-way involved here (NE ¼ of SW ¼, Sec. 15, Twp. 4, R. 2W, Garvin County, Oklahoma) was unplatted agricultural land and not a part of any existing town; that if Section 14 be construed to permit an existing town to include such lands in an incorporation under Chapter 29 of the Mansfield Digest of the Statutes of Arkansas, the said Statute is unconstitutional as an attemped delegation of legislative power to the judiciary. And finally, it is alleged alternatively that the forty-acre tract of land traversed by the railroad was never a part of the Town of Maysville or other municipality, had never been dedicated or platted by any of its owners, and the Town of Maysville has never exercised or attempted to exercise any dominion over it; that no municipal taxes have ever been levied or assessed against it, and therefore insofar as this tract of land is concerned, the Town of Maysville does not exist, either as a de jure or de facto municipal corporation or municipality; that on two occasions the Town has actually annexed portions of the land described in the purported order of incorporation, and by all of these acts has abandoned and is therefore estopped to claim that the said tract of land is a part of the Town of Maysville. The parties agree that the questions are controlled by federal law (Section 14 of the Act of April 26, 1906) and that the requisite amount in controversy is present.

Based on stipulated facts, the trial court concluded that the land in question is not now and never has been within a municipality within the meaning and intent of Section 14, and consequently the plaintiff is not the owner of any interest in the right-of-way involved. In so concluding, the court was careful to distinguish its decision in Chickasha Cotton Oil Co. v. Town of Maysville, supra, on the grounds that in that case, both the trial court and the Court of Appeals had "studiously avoided placing

its stamp of approval upon the 'purported' incorporation of the Town of Maysville." The court took the view that its decision and that of the Court of Appeals in the former case was based upon the fact of an existing town or municipality actually traversed by the railroad, and that the numerous property owners involved in the said action were not in a position to contend that there was no municipality actually functioning as such; whereas in the present case under the admitted facts, the Town of Maysville is not in a position to contend that the right-of-way involved is within a municipality. We agree with the trial court that if the corporate existence of the Town of Maysville was directly challenged in the former case, it was not directly decided. In any event, it is directly tendered here under different facts between different parties, and we have the duty then to consider the matter anew.

Section 14 of the Act of April 26, 1906, supra, contemplated a municipality organized in accordance with Section 14 of the Act of June 28, 1898, 30 Stat. 495, 499, which provides in material part: "That the inhabitants of any city or town in said Territory having two hundred or more residents therein may proceed, by petition to the United States court in the district in which such city or town is located, to have the same incorporated as provided in chapter twenty-nine of Mansfield's Digest of the Statutes of Arkansas, if not already incorporated thereunder * * * and such city or town government, when so authorized and organized, shall possess all the powers and exercise all the rights of similar municipalities in said State of Arkansas. * * *."

Section 785 of Chapter 29, Mansfield's Digest of the Statutes of Arkansas, provides in material part that "When the inhabitants of a part of any county, not embraced within the limits of any city or incorporated town, shall desire to be organized into a city or town, they may apply by petition, in writing, signed by the inhabitants so applying, to be in number not less than twenty qualified voters, to the county court of the proper county, which petition shall describe the territory proposed to be embraced in such incorporated town, and have annexed thereto an accurate map or plat thereof; shall state the name proposed for such incorporated town, and shall also name the person or persons authorized to act in behalf of the petitioners in prosecuting said petition." Section 787 of the same Statute provides in material part that "If the county court shall be satisfied, after hearing such petition, that at least twenty qualified voters reside therein, or within the limits described by said petition, and that said petition has been signed by them; that said limits have been accurately described, and an accurate map or plat thereof made and filed; that the name proposed for the said town is proper and sufficient to distinguish it from others of like kind in the state, and it shall, moreover be deemed right and proper, in the judgment and discretion of the court, that said petition shall be granted, then it shall make out and indorse on said petition an order, to the effect that the incorporated town as named and described in the petition may be organized, which order said court shall sign and deliver, together with the petition and the map or plat, to the recorder of the county, whose duty it shall be to record the same as soon as may be in the proper book of records * * *."

■ It is agreed that the petition for incorporation, properly executed, together with the required map, was filed with the Clerk of the court having jurisdiction of the proceedings, and that the matter was set for hearing on February 15, 1906. But the appearance docket reflects that nothing happened on that date. The appearance docket does show, however, that on February 17, an order was entered and that on the following February 22, a "transcript made and forwarded to agents and a copy sent to the Clerk at Ardmore thereto be recorded." An unsigned order dated February 15, 1906, purporting to incorporate the Town of

Maysville, Indian Territory, is a part of the records of the court.

█ Since the petition for incorporation was not endorsed nor the journal entry signed by the judge of the court, the attempted incorporation was ineffective and invalid. But it is apparent that the incorporators were satisfied that the incorporation had been perfected according to law, and it is undeniably true that the Town of Maysville has been in existence and exercising the functions of a duly incorporated town for more than fifty years. And, it is settled law, based upon sound public policy, that a municipal corporation is in de facto existence where there is organic authority for its incorporation, and there has been a bona fide attempt to organize under such law, and exercise of authority as such corporation. City of Bethany v. Mason, 202 Okl. 66, 210 P.2d 353, quoting 37 Am.Jur. Munic. Corp., § 11; McQuillin, Munic. Corp., 3rd Ed., § 3.48, p. 587. And, it has always been the law in Oklahoma and elsewhere that "Where a municipal corporation is acting under color of law, and its existence is not questioned by the state, it cannot be collaterally drawn in question by private parties; and the rule is not different, although the Constitution may prescribe the manner of incorporation." City of Blackwell v. City of Newkirk, 31 Okl. 304, 121 P. 260, 270. See also City of Bethany v. Mason, supra; Chicago, R. I. & P. Ry. Co. v. Galyon, 179 Okl. 570, 66 P.2d 1066, 67 P.2d 781. The only recognized exception to this rule of immunity is where the attempted incorporation is void ab initio for want of organic authority, or where the attempted exercise of corporate power is utterly void for lack of jurisdiction, as where the corporate acts are ultra vires. See Chicago, R. I. & P. Ry. Co. v. Galyon, supra; Barton v. Stuckey, 121 Okl. 226, 248 P. 592; Chickasha Cotton Oil Co. v. Rogers, 160 Okl. 164, 16 P.2d 112. In sum, there can be no de facto corporation where there is no law authorizing a de jure one. Ocean Beach Heights v. Brown-Crummer Investment Co., 302 U.S. 614, 58 S.Ct. 385, 82 L.Ed.

478, citing City of Guthrie v. Wylie, 6 Okl. 61, 55 P. 103. And see also McCarroll v. Arnold, 199 Ark. 1125, 137 S.W.2d 921. Nor can there be a valid exercise of corporate power without some color of authority therefor.

█ Another exception to immunity from private attack has been recognized where, as here, the corporation sues in its corporate name, alleging its corporate existence. The legal fact of the corporation may be drawn in issue by a denial, which of course places upon the plaintiff the duty of proving the fact of its existence. In these circumstances, the defense challenges the fact, not the legality of corporate existence, and it is therefore not a collateral attack. See Pearson Drainage District v. Erhardt, 239 Mo. App. 845, 201 S.W.2d 484; McQuillin, Munic.Corp., § 3.49, p. 595. And this is especially true we think, where, as here, the corporate existence is the very matter put in issue by the municipality as a proprietary suitor.

█ The courts do not agree on when a municipal corporation is so utterly void in its inception as to be incapable of de facto recognition. McQuillin, Munic.Corp., § 3.48. But the policy of the law strongly favors legal recognition of the de facto existence of a corporation. Indeed, the importance of stability and certainty in matters involving corporate franchises has prompted one court to hold that "The fact that the organization was so defective as to be void in its inception does not change the rule. There is no room or place here for distinction between things that are voidable and things that are void. Neither the nature nor the extent of the illegality in organization can affect the application of these principles * * *." Bowman v. City of Moorhead, 228 Minn. 35, 36 N.W.2d 7, 9, 7 A.L.R.2d 1401. The extreme reluctance of the courts to declare the legal nonexistence of a corporation which actually does exist as a corporate entity, is reflected in the numerous cases involving private capacity to attack the fixing or extension of municipal limits or boundaries. See Annotation 13 A.L.R.2d 1279.

The legislative policy to validate de facto corporations and their public acts has been often expressed in curative or validating statutes, and at a very early date the Oklahoma legislature expressed its policy by providing: "The incorporation, prior to the sixteenth day of November, nineteen hundred and seven, of all cities and towns in this State under the laws in force in the Territory in which they were respectively located * * * are declared and made legal, valid and binding, notwithstanding any failure or omission to comply fully and completely with the laws in force at the time of and in relation to such incorporation * * *." Title 11 O.S.A. § 1. The Oklahoma courts have construed this statute to validate ordinances ab initio which were utterly void on their face. See Chicago, R. I. & P. Ry. Co. v. Galyon, supra. And, they have done so on the generally accepted proposition that whatever a legislature may have constitutionally authorized or dispensed with originally, it may ratify, and such ratification is equivalent to an original grant of power operative by relation as of the date of the thing ratified. Chicago, R. I. & P. Ry. Co. v. Galyon, supra; Comanche County Comr's v. Lewis, 133 U.S. 198, 10 S.Ct. 286, 33 L.Ed. 604.

True, the law cannot make an entity out of a nullity, or validate something which never existed. But no one denies the factual existence of the Town of Maysville, even before the effective date of the validating statute in February 1908. Municipalities are creatures of the legislature, deriving their powers and functions therefrom, and the manifest purpose of the statute was to recognize and give legal effect to all cities and towns organized or attempted to be organized and in existence in the Indian Territory upon the advent of statehood. And, the constitutional power of the legislature to do so cannot be denied. For, certainly it could have dispensed with any of the statutory requirements for the organization of the town, including judicial recognition by formal court order. We think the validating statute had the undoubted effect of giving the Town of Maysville a de jure existence insofar as the laws of Oklahoma are concerned. And, we are of the view that a town attempted to be organized in the Indian Territory under the organic law of Arkansas which was validated as an existing town upon statehood by the law of Oklahoma was a municipality within the meaning and purpose of Section 14 of the Act of April 26, 1906.

A map, recorded in the office of the County Clerk of Garvin County, bearing the legend, "Maysville incorporated February 15, 1906, articles of incorporation filed" shows the tract of land here to be platted as part of the Town. And, the records of the County Treasurer of Garvin County show that in 1908 and 1909 a portion of it was assessed as numbered blocks within the Town of Maysville. But in truth and fact, the original allottee of the tract never joined in the petition to incorporate, never platted the land into lots and blocks and never dedicated the same to the Town. No taxes were ever collected on any part of the tract as city property, and indeed, no taxes were assessable for the land was part of a tax-exempt Indian allotment. The tract was in fact unplatted agricultural land, and for that matter always has been so treated by all parties having or claiming an interest therein, including the town of Maysville.

But even so, the land was admittedly within the boundaries of the Town of Maysville as originally incorporated and as shown by the map or plat attached to the petition for incorporation. And, there is nothing in the organic law of Arkansas (Section 785, Mansfield's Digest) which provides that the owners of land within incorporated limits must join in the petition to incorporate, or that the lands embraced within the limits of any town must be platted and dedicated to the town, or that property within the incorporated limits shall be assessed and taxed as city property. Indeed, the applicable statute, supra, provides only that the land shall be "a part of any county, not embraced within the limits of any

city or incorporated town." And see also Vestal v. City of Little Rock, 54 Ark. 321, 329, 15 S.W. 891, 16 S.W. 291, 11 L.R.A. 778.

■■■ When, on June 30, 1909, the railroad failed to acquire fee title to the right-of-way, it was within the corporate limits of Maysville as attempted to be incorporated under applicable law of Arkansas, and as validated by the laws of the State of Oklahoma. It follows that on that date, fee title vested in the Town of Maysville, and the remaining question must be therefore whether by subsequent acts or conduct, the Town is now precluded from asserting title to the right-of-way as within its boundaries. There is no suggestion of divestiture or defeasance by any formal act of de-annexation, conveyance or disclaimer. The trial court apparently based its decision on the broad principles of equitable estoppel. And, the doctrine of estoppel is applicable to municipal corporations when acting within their charter powers, and especially in a proprietary capacity. Oklahoma City v. Pratt, 185 Okl. 637, 95 P.2d 596; Griffin v. Oklahoma Natural Gas Corp., 10 Cir., 37 F.2d 545; Annotation 1 A.L.R.2d 338, 353; 38 Am.Jur. Munic.Corp. §§ 668, 670.

The "fundamental difference" in this case and the Chickasha Cotton Oil Co. case is said to lie in the fact that in the earlier case, the right-of-way passed through tracts which had been platted by the respective owners into lots and blocks, and dedicated to the Town of Maysville; that consequently, as a matter of cold actual fact, the right-of-way in the earlier case was within a municipality, whereas our tract is and always has been agricultural land which was never dedicated or platted, and never taxed as a part of the Town, but had always been assessed for tax purposes as rural property; that the only house on the tract was assessed at the rural water rate; that the Town of Maysville entered into an agreement with the State Highway Department in 1934, by the terms of which it was agreed in effect that the tract of land involved here was outside the city limits; and upon the further fact that in 1948 and 1949 and as late as June 1955, the Town extended its city limits to include an annex certain tracts of land within the original corporate limits as filed in 1906; and in 1958, the Town Clerk certified to a map which the Clerk's office used as being the official map of the Town, which map did not include this tract of land as within the city limits. All of this, say the appellees, proves that the tract of land in question, while within the purported limits of the original incorporation, has never been so treated by the Town or any one else, until it became valuable for oil and gas, and the Town of Maysville instituted this suit.

It is also true, however, that in 1930 the Town of Maysville enacted an ordinance defining the boundaries of the Town in accordance with the 1906 original map or plat and which included the land in question. Furthermore, applicable statutes provide that agricultural lands taken within the corporate limits shall be taxed as other adjoining lands outside the corporate limits. Title 11 O.S.A. § 1044. And moreover, the assessment and collection of ad valorem taxes within the limits of an incorporated city in Oklahoma is not the prerogative of the city, but of the county officers wherein the cities or towns are located. See Title 68 O.S.A. § 60. There is nothing inconsistent with the tract's identity as a part of the municipality, and the fact that it has never been platted or dedicated, and has always been considered rural property and taxed as such.

■■■ But even so, there can be no doubt that apart from the ordinance of 1930, this tract of land has always been treated by the Town and the public generally as outside the city limits of the Town of Maysville. It is also equally significant that during all of these years, the property rights involved and asserted in this controversy have been burdened with a railroad easement. Ownership of the underlying estate was of no importance until it became valuable for oil and gas. Until that time, no one was concerned with its ownership and no one

814

made valuable improvements or relied upon the Town's conduct to his detriment. There is nothing in this record to indicate that any of the appellees acquired their interest from the abutting property owners or in the right-of-way itself in reliance upon the understanding that the forty-acre tract of land involved was outside the Town limits. But any such reliance would be merely upon the legal consequences of facts, and a purchase thus made is no more than the purchase of an interest in litigation. We conclude that the essential elements of estoppel are lacking, and the case is therefore reversed with directions to proceed accordingly.